[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
01/11/2000
THOMAS K. KAHN
CLERK

_____

No. 98-6136

_____

D. C. Docket No. 98-C-0331-W

DONALD L. DIONNE, as the Trustee,
of the Bankrupt Estate of Ruby Mae Simmons,

                                        Plaintiff-Appellant,

versus

RUBY MAE SIMMONS, a.k.a. RUBY MAE
SIMMONS RASHID, and ABDUL R. RASHID,

                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(January 11, 2000)**

Before EDMONDSON and BIRCH, Circuit Judges, and OWENS\*, Senior District
Judge.

_____

\* Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle
District of Georgia, sitting by designation.

OWENS, Jr., Senior District Judge:

This case requires that we review a district court order that without the benefit of reviewing the record or holding a hearing on the merits, withdrew the reference to the bankruptcy court. The district court order also reversed the bankruptcy court's order denying the debtor's motion to dismiss, and refused the bankruptcy court's recommendation that the debtor be held in contempt. We reverse in part and affirm in part.

## I. Background

This case arises from Ruby Mae Simmons' (the "Debtor") sixth filing for bankruptcy dating back to March 1988. Before us is her most recent Chapter 7 bankruptcy, 11 U.S.C. §§ 701-766, which was preceded by five separate voluntary filings under Chapter 13 of the Bankruptcy Code.[1] 11 U.S.C. §§ 1301-1330 (1994).

---

[1]The Debtor filed her first Chapter 13 petition on March 17, 1988. She dismissed her first two petitions voluntarily. The third case was dismissed on August 25, 1994, when the Debtor failed to make payments under her plan. She filed a fourth case on October 7, 1994, but the bankruptcy court dismissed it on July 17, 1995, for again failing to make payments under her plan. The fifth filing occurred on August 11, 1995. The Debtor received a personal injury settlement of $64,082.28 on September 2, 1996, causing her to request her petition to be dismissed. On October 1, 1996, Bankruptcy Judge Bennett dismissed the Debtor's case, and barred the Debtor from filing again for a period of one year.

The Debtor owned a home mortgaged to S. Lee Pake. The Debtor defaulted on her mortgage and Pake began proceedings in Alabama state court to dispossess her and obtain damages due to the default. On July 16, 1997, a hearing was held in the state court action. The following day that court entered an order divesting the Debtor of the property, and vesting title and possession of the home in Pake. The court set a hearing for damages to be held on July 29, 1997.

The day before the hearing was to be held, Debtor filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. This automatically stayed the proceedings in state court. The case was assigned to Judge Bennett in the United States Bankruptcy Court for the Northern District of Alabama.[2] In her petition for relief the Debtor identified her only creditor as Pake. The following day Pake filed a motion to dismiss the bankruptcy case, but this motion was denied. The bankruptcy court appointed Donald L. Dionne as trustee (the "Trustee"), and because the Debtor had listed no assets for distribution, a Bankruptcy Rule 2002(e) notice was sent to creditors.[3]

---

[2]Apparently neither Debtor nor Judge Bennett heeded Judge Bennett's one year ban on filing.

[3]Bankruptcy Rule 2002(e) states:

In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file

On August 28, 1997, Pake moved for relief from the automatic stay. This motion was granted on September 11, 1997, and as a result the Debtor was evicted from her home. Pake then obtained a judgment of $19,892.64 for damages in the state court proceeding.

On September 24, 1997, at a § 341 meeting, the Debtor admitted that she owed monies to at least four other creditors not listed on her petition: Tucker Motors, Liborious Agwana, Alabama Power, and a student loan lender.

On October 22, 1997, the Debtor made a motion to dismiss her Chapter 7 proceeding, and the Trustee objected to the dismissal. The Trustee had become aware that the Debtor possessed two automobiles and a bank account, causing him to pursue an investigation into the location of one of the Debtor's vehicles, a 1994 Cadillac, which she had not listed on her petition. The Trustee also initiated two adversary proceedings in the bankruptcy court to obtain possession of the 1994 Cadillac and to obtain deposit account monies. The bankruptcy court issued a temporary restraining order and preliminary injunction to order the Debtor to turn over the Cadillac, monies, and accounts to the Trustee.

---

claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

Fed. R. Bankr. P. 2002(e).

On October 29, 1997, the Debtor amended her motion to dismiss claiming her only creditor (Pake) had been relieved from the stay. The motion to dismiss was denied on November 5, 1997.

The Trustee attempted to depose the Debtor on February 5, 1998, to obtain information that would lead to the location of the 1994 Cadillac, which supposedly was in the possession of the Debtor's husband Abdul Rashid. The Debtor did not show up for the deposition. The Debtor was brought before the bankruptcy court on February 9, 1998, by the U.S. Marshal, but she refused to answer any questions, claiming she had a privilege against self-incrimination. The next day the Debtor again asserted her privilege and refused to be deposed.[4]

On February 10, 1998, the Clerk of the Bankruptcy Court issued notice under F. R. Bankr. P. 3002(c)(5)[5] requesting that all parties file their claims because assets

---

[4]In fact the Trustee attempted to depose the Debtor on at least five occasions where the Debtor did not appear. Even when the Debtor did show up and answer questions, she was hardly forthcoming, sometimes claiming to not even remember the names of her relatives.

[5]Rule 3002(c)(5) states:

If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

F. R. Bankr. P. 3002(c)(5).

had been located. According to the Trustee, creditors filed six proofs of claims totaling $22,653.58.[6]

The Debtor continuously denied any knowledge of the whereabouts of the Cadillac or her husband who supposedly was in possession of the car. The Trustee found evidence of at least 80 phone calls that the Debtor made to the Debtor's husband, as well as letters she addressed to him. The Bankruptcy Court submitted a report and recommendation that the Debtor be held in contempt of court until she divulged information regarding the location of her remaining assets. The report and

[6]

| Claimant | Date Filed | Amount of Claim |
|---|---|---|
| S. Lee Pake | 2/23/98 | $19,892.64 |
| City of Tuscaloosa | 4/17/98 | $381.76 |
| Alabama Power | 4/24/98 | $260.84 |
| Bell South | 5/11/98 | $1,187.18 |
| DCH Regional Medical Center | 5/22/98 | $461.16 |
| DCH Regional Medical Center | 5/22/98 | $470.00 |
| Total: | | $22,653.58 |

The Debtor argues that S. Lee Pake's claim was somehow invalid. The proper forum for an attack on a proof of claim is not this Court, but the bankruptcy court. The Court notes that pursuant to 11 U.S.C. § 502, a proof of claim is valid until it is objected to. The record shows that no adversary proceeding occurred and no objection was filed on the issue.

6

recommendation of the bankruptcy court was forwarded to the United States District Court for the Northern District of Alabama on February 12, 1998.

The Trustee located and took possession of the 1994 Cadillac on February 17, 1998. Currently the Debtor's vehicles are being stored in a warehouse under the Trustee's control.

The bankruptcy court's recommendation and report was assigned to Judge U.W. Clemon on February 19, 1998. That same day, without a hearing and without giving notice to the trustee, Judge Clemon withdrew the reference of the case to the bankruptcy court and dismissed the entire bankruptcy case. The district court also refused to hold the debtor in contempt of court.

## II. Discussion

This Court reviews the determination of law, whether from the bankruptcy court or the district court, de novo. See Yale Materials Handling Corp.,119 F.3d 1485, 1494 (11th Cir. 1997), and reviews the bankruptcy court's factual findings under the clearly erroneous standard. See id.

### A. Withdrawal of Reference

A district court may, for cause, withdraw the reference of a case or proceeding in bankruptcy under 28 U.S.C. § 157(d) which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely

motion of any party, *for cause shown*. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organization or activities affecting interstate commerce.

28 U.S.C. § 157(d) (1994) (emphasis added). The law of this circuit states that:

"Once a bankruptcy court has assumed jurisdiction ... a district court may withdraw reference only 'for cause shown.'" In re Park Lane/Atlanta Joint Venture, 927 F.2d 532, 536 (11th Cir. 1991). Although cause is not defined in the statute, this court has found that it is not an empty requirement. See id. (requiring cause must be shown for the district court to withdraw the reference under 28 U.S.C. § 157(d)).

As this court noted in Park Lane:

Although this Court has not yet articulated criteria for determining the existence of cause for withdrawal, other courts have. In Holland American Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir. 1985), the Fifth Circuit noted in dicta that in determining whether cause existed a district court should consider such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process. Id. at 998

Parklane, 927 F.2d at 536 n.5 (citations omitted). It can be inferred from the district court's memorandum order that the district court assumed there were no claims against the bankruptcy estate, and that the case was being handled inappropriately by the bankruptcy court. This assumption might be due to the fact that the district court never viewed the record before withdrawing the reference and

8

dismissing the case. At the time the district court order was written, creditors still had 90 days to respond to the 3002(c)(5) notice, and file a claim. As shown earlier, at least six proofs of claim were filed in response to the 3002(c)(5) notice.[7]

None of the goals suggested in Holland American Ins. Co. were advanced by the district court's withdrawal. Dating back to 1988, this debtor had a history of grossly abusing the bankruptcy process. By withdrawing the reference, the district court did not facilitate the bankruptcy process. Instead, the district court decision hindered the process, and its actions threatened to allow the Debtor to once again evade her creditors, hardly promoting the most economical use of the parties' resources. The district court should have taken into consideration the possibility that claims might be filed against the bankruptcy estate before it withdrew the reference of the case.

We conclude that the case was not being handled inappropriately by the bankruptcy court, and the district court was mistaken in believing that it was. The bankruptcy court's actions were not cause for withdrawing the reference to the bankruptcy court under 28 U.S.C. § 157(d).

**B. Contempt charges**

---

[7]This Court does not mean to suggest that all of the proofs of claim were filed in a timely fashion under the rule.

The bankruptcy judge recommended that the Debtor be found in both civil and criminal contempt. The bankruptcy judge also recommended that the debtor be incarcerated to force her to turn over the 1994 Cadillac, the deposit monies, and her husband's location. The Cadillac, deposit monies, and her husband's location were all acquired by the Trustee soon after this recommendation was filed. The district court refused the recommendation for sanctions noting there was "no credible evidence that [the Debtor could] comply with the court order requiring her to disclose [the Cadillac's] location to the Trustee." Dionne v. Simmons, 5, No. 98-0331-W (N.D. Ala. filed Feb. 19, 1998) The Trustee only appeals the district court's denial of civil contempt.

The Court of Appeals reviews a district court's grant or denial of civil contempt in a bankruptcy proceeding for abuse of discretion. See In re Jove Engineering, Inc., 92 F.3d 1539, 1546 (11th Cir. 1996). Soon after the contempt recommendation was filed the Trustee located and took possession of the Debtor's Cadillac and deposit monies, thereby mooting the issue. The district court may have been erroneous in its finding that there was no credible evidence about the Debtor's ability to comply with the bankruptcy court order to disclose the location of the Cadillac, but it is not necessary that we decide whether the district court abused its discretion. As there was no longer a need to hold the Debtor in

10

contempt, we agree that civil contempt penalties should not have then been imposed upon the Debtor.

## C. Reversal of Refusal to Dismiss

The district court reversed the bankruptcy court's denial of the Debtor's motion to dismiss. Section 707(a) of the Bankruptcy Code provides for voluntary dismissal after a notice and hearing for cause. See 11 U.S.C. § 707(a), which provides: "The Court may dismiss a case under this chapter only after notice and a hearing and only for cause." Id. Three nonexclusive examples of cause are provided.[8]

The district court in its memorandum opinion stated:

In the first place, the record does not disclose good cause for denial of Simmons' petition to dismiss the bankruptcy petition. The only known creditor has apparently obtained all that he is entitled to. Whether he has or not is irrelevant, since he absented himself from the first meeting of creditors and has not filed a claim against the bankrupt estate. *In fact, no one has filed a claim against the estate!*

---

[8]These three causes are:
      (1) unreasonable delay by the debtor that is prejudicial to creditors;
      (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
      (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

> What, then is the justification for keeping this case on the presumably congested docket of the Bankruptcy Court? Surely, it cannot be that the Trustee needs to collect the assets of the bankrupt estate - for there are no creditors. What will he do with these assets once they are collected, other than turn over 40% of their value to his attorney?

> The Bankruptcy Court plainly erred by denying Simmons' petition to dismiss the petition.

Memorandum Opinion, February 19, 1998. The district court suggests that cause was needed for the bankruptcy court not to grant the Debtor's motion to dismiss. Section 707(a) clearly states that a case shall only be dismissed for cause. See 11 U.S.C. § 707(a). Therefore the burden for showing cause is on the moving party.

It is clear that the district court was mistaken as to the status of the case. We have already discussed supra as to why no claims had been filed at the time the district court ordered the dismissal.

We conclude that the bankruptcy court was correct when it did not find cause for dismissal. The bankruptcy court judge found that it would be in the best interests of the creditors and the Debtor to deny the motion and to allow her debts to finally be resolved. See In Simmons, 97-72040, (Bankr. N.D Ala.) Transcript of Nov. 5, 1997 at 26. We agree with the bankruptcy judge that the Debtor's history of abuse warranted the bankruptcy court's denial of the Debtor's motion. When dismissal will only allow the Debtor to hinder creditors, secret assets, and further the Debtor's abuse of the system, dismissal of her voluntary petition is not

12

warranted. Cause did not exist for dismissal. See Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.), 857 F.2d 1061, 1063 (5th Cir. 1988) (holding that a bankruptcy court did not abuse its discretion by failing to dismiss when dismissal would prejudice the creditors).

## III. Conclusion

The district court erred in withdrawing the reference to the bankruptcy court as there was no cause for a permissive withdrawal under 28 U.S.C. § 157(d). Accordingly, we **REVERSE** the decisions of the district court withdrawing the reference to the bankruptcy court and reversing the bankruptcy court's denial of Debtor's motion to dismiss. We **AFFIRM** the district court's refusal to hold the Debtor in contempt. The case is **REMANDED** to the district and bankruptcy courts for further proceedings in accordance with this opinion.