**In re John Michael BAIRD and Jane Nelson Baird, Debtors.**

**No. 6:09–bk–04578–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Jan. 20, 2010.

114

David R. McFarlin, Wolff, Hill, McFarlin & Herron, P.A., Orlando, FL, for Debtors.

### MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion to Dismiss Bankruptcy Case (Doc. No. 31) filed by LifePoint Hospitals, d/b/a Bourbon Community Hospital, LLC ("BCH"), seeking dismissal of this case pursuant to 11 U.S.C. Section 707(a) and the Motion to Dismiss BCH's Motion (Doc. No. 33) filed by the Debtor Jane Nelson Baird. The final evidentiary hearing was held on November 18, 2009 at which the Debtors John Michael Baird ("Dr. Baird") and Jane Nelson Baird ("Mrs. Baird") (collectively, "Debtors"), their counsel, a representative of BCH, and counsel for BCH appeared. The parties, pursuant to the Court's directive, filed post-hearing briefs and deposition transcript designations (Doc. Nos. 56, 57, 58, 59, 60).

BCH's Motion to Dismiss is due to be denied and Mrs. Baird's Motion to Dismiss is due to be denied as moot for the reasons set forth herein. The Court makes the following findings and conclusions after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

### Mark B. Medley Transcript Designations

Both parties rely upon the deposition transcript of Mark B. Medley ("Medley"), the former Chief Executive Officer of BCH, and seek the admission of various portions of the transcript (Doc. Nos. 56, 59). The Debtors objected to BCH's offering into evidence at trial portions of the deposition transcript. They filed a Notice post-hearing (Doc. No. 56) designating portions of the transcript and request those portions be admitted into evidence. BCH filed a post-hearing response to the Debtors' trial objection asserting the designated portions of the deposition are non-hearsay (Doc. No. 58).

The Debtors' objections to BCH's designations are overruled. The complete transcript of Medley's deposition is admitted into evidence.

### Background

Dr. Baird is a sixty-one year-old physician specializing in obstetrics and gynecology ("OB/GYN"). He obtained his medical degree in 1979 and was in private practice in Kentucky from 1983 through 2005. Mrs. Baird has been Dr. Baird's office manager and has always been integral in his professional and financial decisions.

Dr. Baird's practice was successful, generating an annual income of approximately $350,000.00. The Debtors lived a lavish lifestyle. They owned a luxury boat, drove luxury cars, took frequent vacations, lived in an up-scale neighborhood, and Mrs. Baird had a monthly clothing allowance of $2,500.00, which she often exceeded. She spent more than $30,000.00 on clothing at Talbots in 2006. The Debtors explained Mrs. Baird needed to present an image commensurate with her status as a doctor's wife.

Dr. Baird retired from his OB/GYN practice and opened Bariatric Medicine

PSC in Owensboro, Kentucky focusing on Bariatrics, the branch of medicine relating to the causes, prevention, and treatment of obesity. Mrs. Baird was the office manager. The practice was not successful and the Debtors incurred loans and credit card debt to pay business and personal expenses. Dr. Baird exhausted his retirement accounts. The Debtors sold their boat and home and purchased a smaller house located at 104 Avalon Path, Georgetown, Kentucky 40324 ("Kentucky Property"). They closed the Bariatrics practice in 2007.

Dr. Baird sought new employment in the OB/GYN field and met with BCH, a fifty-eight bed licensed hospital in Paris, Kentucky, to explore whether the area could support a full-time OB/GYN practice. Dr. Baird and BCH, in April 2007, executed a Physician Recruiting Agreement and addenda, including a Net Collectible Revenue Guarantee (collectively, the "Agreement"), pursuant to which Dr. Baird agreed to establish an OB/GYN practice in the geographic area served by BCH and BCH would pay Dr. Baird:

(i) an advance of $42,918.00 per month for eighteen months;

(ii) a "signing bonus" of $25,000.00;

(iii) relocation expenses of $10,000.00;

(iv) marketing expenses up to $12,000.00; and

(v) practice management consulting service expenses up to $15,000.00.

The Agreement provided the monthly advances were to be reduced by the amounts Dr. Baird collected from patients.

Dr. Baird established an OB/GYN practice near BCH in August 2007 with Mrs. Baird as his office manager. BCH paid $507,859.17 to Dr. Baird during the period July 2007 through July 2008 from which Dr. Baird drew a monthly salary of $22,000.00 and paid Mrs. Baird a monthly salary of $3,000.00.

The practice, from its onset, was not successful. The relationship between Dr. Baird and BCH deteriorated, with each party blaming the other for the practice's failure. Dr. Baird asserts the geographic region could not support a full-time OB/GYN practice and BCH misrepresented the region could support his practice. BCH declared Dr. Baird in default of the Agreement and initiated an arbitration proceeding.

Dr. Baird, while subject to the Agreement, began investigating employment opportunities in Florida and contacted OB–Hospitalist Group LLC ("OBH") in April 2008 based upon an Internet offering. He became licensed in Florida and was hired by OBH as a hospitalist. The Debtors relocated to Florida in August 2008 where they lease an apartment located at 501 Mirasol Circle, Number 417, Kissimmee, Florida 34747.

Dr. Baird provides emergency and non-emergency OB/GYN services to patients in OBH's facilities as an independent contractor. He is paid an hourly rate of $120.00 based upon a twenty-four hour shift and works approximately 168 hours per month (Doc. No. 4). He is paid wages of approximately $20,160.00 per month. No withholdings are deducted from his pay. Mrs. Baird has not been employed since the Debtors moved from Kentucky (Doc. No. 9). Dr. Baird's OBH income is the Debtors' sole source of income.

### Bankruptcy Case

The Debtors filed a joint Chapter 7 petition on January 28, 2009 ("Petition Date") (Doc. No. 1) and the automatic stay of 11 U.S.C. Section 362(a) arose staying the BCH arbitration proceeding. The Debtors listed in their Schedules (Doc. No. 1) total assets of $259,678.64 comprised of real property valued at $248,220.00 and person-

al property valued at $11,458.64. They listed total debts of $869,208.32 comprised of secured debts of $233,743.01 and general unsecured debts of $635,465.31.

The Debtors were ineligible for Chapter 13 on the Petition Date because their unsecured debts exceed the debt limitations of 11 U.S.C. Section 109(e). The Debtors are eligible for Chapter 11.

The Chapter 7 Trustee Gene T. Chambers ("Trustee") concluded the Debtors' 11 U.S.C. Section 341 meeting of creditors on May 15, 2009 and designated this case an asset case on October 17, 2009. She and the Office of the United States Trustee have made no appearances and taken no positions in this dismissal matter.

The Kentucky Property is encumbered by a first-priority mortgage of approximately $233,243.01 held by Traditional Bank and a lien held by The Pavilion Courtyards for homeowner's association dues of at least $500.00. The Debtors value the Kentucky Property at $248,220.00. The Trustee determined the Kentucky Property has no equity and abandoned it pursuant to her unopposed Report and Notice of Abandonment (Doc. No. 46). The Debtors continue to retain the Kentucky Property, which is vacant.

BCH seeks dismissal of this case as an abusive filing citing 11 U.S.C. Section 707(a) as the basis of its Motion, but attempts to bootstrap the Motion into an 11 U.S.C. Section 707(b)(3)(A) and Section 707(b)(3)(B) proceeding. BCH asserts: (i) the Debtors filed their petition in bad faith; and (ii) the totality of the Debtors' financial situation demonstrates abuse, which constitute Section 707(b)(3)(A) and Section 707(b)(3)(B) causes of action.

Much of BCH's trial presentation related to Dr. Baird's alleged breach of the Agreement and whether he entered into the Agreement in good faith. Such issues are relevant to a nondischargeability proceeding pursuant to 11 U.S.C. Section 523(a). BCH did not institute a non-dischargeability proceeding.

### Analysis

■■■ This case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). BCH seeks dismissal of the Debtors' case pursuant to 11 U.S.C. Section 707(a) and/or Sections 707(b)(3)(A) and 707(b)(3)(B). BCH has the burden to establish the Debtors' filing is abusive by a preponderance of the evidence. *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 743 (11th Cir.2000); *In re Parada*, 391 B.R. 492, 496 (Bankr.S.D.Fla.2008).

### 11 U.S.C. Section 707(a)

■■■ Section 707(a) of the Bankruptcy Code provides a bankruptcy case may be dismissed "for cause" which includes:

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). The statutory list of "for cause" factors is non-exclusive. *In re Simmons*, 200 F.3d at 743. The Courts, through pre- and post-BAPCPA case law, have developed an expanding list of factors relevant to a Section 707(a) determination, which include:

(i) the debtor reduced his creditors to a single creditor shortly before the petition date;

(ii) the debtor made no life-style adjustments or continued living a lavish life-style;

(iii) the debtor filed the case in response to a judgment, pending litigation, or collection action;

(iv) there is an intent to avoid a large, single debt;

(v) the debtor made no effort to repay his debts;

(vi) the unfairness of the use of Chapter 7;

(vii) the debtor has sufficient resources to pay his debts;

(viii) the debtor is paying debts of insiders;

(ix) the schedules inflate expenses to disguise financial well-being;

(x) the debtor transferred assets;

(xi) the debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors;

(xii) the debtor employed a deliberate and persistent pattern of evading a single major creditor;

(xiii) the debtor failed to make candid and full disclosure;

(xiv) the debtor's debts are modest in relation to his assets and income; and

(xv) there are multiple bankruptcy filings or other procedural "gymnastics."

*United States v. McDaniel (In re McDaniel),* 363 B.R. 239, 244 (M.D.Fla.2007) (*citation omitted*). Good faith is an inherent requirement of Section 707(a) and these factors relate to the debtor's intentions. *Id.* A Section 707(a) dismissal determination must also take into consideration the debtor's need for a fresh start. *Id.* "[E]nsuring a 'fresh start' for individual debtors ... [is] at the core of federal bankruptcy law." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (Souter, J., dissenting).

■ Some Courts include the debtor's ability to pay creditors as a "for cause" factor in a Section 707(a) determination, but ability to pay may not constitute the exclusive or primary factor. *Perlin v. Hitachi Capital Am. Corp. (In re Perlin),* 497 F.3d 364, 374 (3d Cir.2007); *In re Woodburn,* No. 07–00927–5–ATS, 2008 WL 2777352, at * —— (Bankr.E.D.N.C. July 17, 2008). A dismissal based upon a debtor's ability to pay "is expressly prohibited by the legislative history [of Section 707(a)]." *In re Perlin,* 497 F.3d at 374. The legislative history of Section 707(a) includes Congress' statements:

> The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.

H.R. REP. No. 95–595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6336; S. REP. No. 95–989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5880.

The statutory grounds for dismissal set forth in Section 707(a) do not apply to the Debtors. The Debtors have not acted with unreasonable delay, are not delinquent in the payment of any bankruptcy fees or charges, and have met all of their Section 521 filing duties. The core issue for determination is whether the circumstantial factors establish the Debtors have acted in bad faith.

■ The circumstantial factors of this case, taken as a whole, do not establish the Debtors have acted in bad faith and are undeserving of a fresh start:

(i) The Debtors did not reduce their creditors to a single creditor shortly before the Petition Date. BCH is not the Debtors' only creditor. The Debt-

ors, as reflected in their Schedules and the proofs of claim (Claim Nos. 1–1 through 6–1), have several legitimate creditors including Traditional Bank, The Pavilion Courtyards, credit card debts, a personal loan from Independence Bank, and potential liabilities relating to former patients.

(ii) The Debtors have made significant life-style adjustments and no longer live a lavish life-style. They rent an apartment. They no longer take vacations and Mrs. Baird has curtailed her shopping. Their leased vehicles are luxury vehicles and their monthly expenditures for the vehicles totaling $1,434.00 are excessive. However, the Debtors, particularly Dr. Baird for his hospitalist employment, require reliable transportation.

(iii) The Debtors' purpose in filing for bankruptcy is not solely to avoid paying BCH's claim. Obtaining a discharge of BCH's claim is a goal of the Debtors, but not their sole motivation in filing for bankruptcy relief. They have other debts which are due to be discharged. No parties have filed 11 U.S.C. Section 727 or Section 523 adversary proceedings against the Debtors.

(iv) The Debtors repaid much of their credit card and household debt pre-petition. They attempted to address the BCH indebtedness with BCH pre-petition, including the possibility of Dr. Baird working at another BCH-related hospital, but the parties were unable to reach a resolution.

(v) The Debtors are not paying the debts of insiders.

(vi) BCH did not conduct an itemized analysis of the Debtors' Schedule J monthly expenditures, but certain expenses appear to be inflated. The Debtors include a monthly expense of $950.00 for support of additional dependents not living with the Debtors, but have no dependents. The Debtors include utility, mortgage, and homeowner association expenses for the Kentucky Property, which they admit they are not paying. These expenses are not actual expenses and inflate the Debtors' monthly expense total.

(vii) The Debtors did not transfer assets. They have not engaged in fraud.

(viii) The Debtors have not employed a deliberate and persistent pattern of evading a single major creditor.

(ix) The Debtors, with the exception of the dependent care and Kentucky Property expenses in Schedule J, have made candid and full disclosures.

(x) The Debtors have not engaged in multiple bankruptcy filings or other procedural "gymnastics."

The only factor from this list that is inconsistent with the Debtors' good faith is their Schedule J disclosures. The dependent care and Kentucky Property expenditures are unsubstantiated and inflated. Removal of these expenses would create positive monthly disposable income enabling the Debtors to pay a significant portion of their unsecured debts.

The Debtors' ability to pay their unsecured debts constitutes one factor indicating bad faith pursuant to Section 707(a), but cannot be the sole or primary basis for dismissal. Their ability to pay coupled with their deficient disclosures in Scheduled J and retention of luxury vehicles do not constitute sufficient grounds for dismissal of their case.

The totality of the circumstances reflects the Debtors have acted in good faith. Their intentions are honest and they have legitimate grounds for seeking a fresh

start. BCH has not established cause exists for dismissal of this case pursuant to 11 U.S.C. Section 707(a).

### 11 U.S.C. Sections 707(b)(3)(A) and (b)(3)(B)

██ A Chapter 7 case filed after the enactment of BAPCPA by an individual with primarily consumer debts is subject to dismissal, or conversion with the debtor's consent, if, after notice and a hearing, a Court "finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). BAPCPA broadened the standard for dismissal pursuant to 11 U.S.C. Section 707(b)(1) from "substantial abuse" to "abuse." Congress enacted two subjective tests for determining abuse:

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances of the debtor's financial situation demonstrates abuse.

11 U.S.C. §§ 707(b)(3)(A), 707(b)(3)(B).

██ The dismissal provisions of Section 707(b)(3) apply only to cases filed by individual debtors in which their "debts are primarily consumer debts...." 11 U.S.C. § 707(b)(1). A consumer debt is a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The term "primarily" in the context of Section 707(b) means "consumer debt exceeding fifty percent of the total debt." *Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 808 (10th Cir.1999); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir.1988).

██ BCH has not established the threshold requirement of a Section 707(b) proceeding. The Debtors' debts are not primarily consumer debts, but are business debts emanating from Dr. Baird's medical practices.

The Debtors listed in Schedule D secured debts of $233,743.01 relating to the Kentucky Property, no unsecured priority debts in Schedule E, and Schedule F general unsecured debts of $635,465.31. Schedule F contains 245 entries, of which 235 entries appear to be former female patients of Dr. Baird in Kentucky who are listed as "business debt" in an unknown amount and designated as contingent, unliquidated, and disputed.

The remaining Schedule F entries are designated as "business debt" and include a personal loan of $39,841.60 from Independence Bank, a Macy's account for $0.00, two American Express accounts for $8,775.00 and $8,445.63, two Bank of America accounts for $20,364.84 and $32,463.95, a Discovery account for $17,399.72, a Traditional Bank debt of $10,446.09, a debt owed to BCH of an unknown amount, and a debt owed to Life-Point in the amount of $497,728.48. These debts, excluding the BCH debt, total $371,479.84.

The Debtors' Chapter 7 Statement of Current Monthly Income and Means–Test Calculation (Doc. No. 1) is consistent with their Schedules. They filed a blank Means–Test based on the declaration their debts are not primarily consumer debts. No party has challenged their Means–Test or the categorization of their debts as business debts.

BCH filed a general unsecured claim, Claim No. 1–1, for $497,728.48 based upon the Agreement. BCH did not establish the indebtedness was incurred by the Debtors primarily for a personal, family, or household purpose. BCH's debt does not constitute a consumer debt pursuant to 11 U.S.C. Section 101(8). BCH did not establish the non-BCH debt constitutes consumer debt, but even if such debt constitutes consumer debt, BCH's debt constitutes more than half of the Debtors' debts.

The Debtors' debts are not primarily consumer debts and they are not subject to the dismissal provisions of Section 707(b). 11 U.S.C. §§ 707(b)(1), 101(8). BCH's Motion to Dismiss, to the extent it constitutes a motion to dismiss pursuant to 11 U.S.C. Section 707(b)(3)(A) or 707(b)(3)(B) is due to be denied.

### 11 U.S.C. Section 707(b)(3)(B): Ability to Pay

 A discussion of Section 707(b)(3)(B) is warranted because, had the Debtors been subject to the Section 707(b) dismissal provisions, their case would be due to be dismissed based upon the totality of the circumstances. The Debtors, on the Petition Date, had a meaningful ability to repay their unsecured creditors.

 The primary inquiry of a Section 707(b)(3)(B) analysis is whether the debtor's financial situation indicates he has the ability to pay a substantial portion of his unsecured nonpriority debts. *In re Henebury*, 361 B.R. 595, 607 (Bankr.S.D.Fla. 2007). The courts utilize the 11 U.S.C. Section 1325 definition of "disposable income" in conducting the ability to pay analysis. *Id.* at 611. Section 1325(b)(2) defines "disposable income" as:

> (2) Current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonable necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;

11 U.S.C. § 1325(b)(2) (2007). The Debtors' Schedule J contains significant expenses that are not reasonably necessary for their maintenance or support.

The Debtors' Schedules I and J reflect negative disposable income of $489.67 based upon average monthly income of $13,793.00 and average monthly expenses of $14,282.67. The Debtors list monthly expenses of $2,389.00 relating to the Kentucky Property, including a mortgage expense of $1,649.00 and homeowner association dues of $500.00, which the Debtors are not paying. They list vehicle expenses of $540.00 for the BMW and $894.00 for the Hummer and a payment of $950.00 for additional dependents not living with them. The Debtors have no dependents and the $950.00 expense is unsubstantiated.

The Debtors' expenditures for the Kentucky Property and the Hummer are excessive and unreasonable based upon the circumstances. The Debtors continue to retain the Kentucky Property with no intention to return to Kentucky and have made no attempt to lease the property to generate rental income. It is neither necessary nor reasonable for the Debtors to retain the Kentucky Property or to maintain two luxury vehicles. Removal of the Kentucky Property expenses, the Hummer lease payment of $894.00, and dependent expenses results in total monthly expenses of $10,049.67 and positive disposable income of $3,743.33.

The Debtors have disposable monthly income of at least $3,743.33. Monthly payments of $2,849.33 made over sixty months would result in repayment of $224,599.80. Their general unsecured creditors, based upon the total debt amount of $635,465.31, without claim objections and administrative costs, would receive a payout of roughly thirty-five percent. The Debtors' payment of substantial fees to their counsel post-petition further reflects their ability

to pay their creditors. They paid $26,433.25 to counsel post-petition (Doc. Nos. 54, 55).

The Debtors' ability to pay such a significant portion of their unsecured debts would constitute a basis for dismissal of this case pursuant to 11 U.S.C. Section 707(b)(3)(B). This situation is the quintessential abusive situation Congress attempted to eradicate through enactment of 11 U.S.C. Section 707(b)(3)(B). However, Section 707(b)(3)(B) is not applicable given the Debtors' debts are primarily business debts.

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that BCH's Motion to Dismiss (Doc. No. 31) is hereby **DENIED** pursuant to 11 U.S.C. Sections 707(a) and 707(b); and it is further

**ORDERED, ADJUDGED AND DECREED** that Mrs. Baird's Motion to Dismiss (Doc. No. 33) is hereby **DENIED** as moot.