Mindy A. Mora, Judge
THIS MATTER came before the court for hearing on February 23, 2018, upon the Motion to Dismiss Chapter 7 Case for Bad Faith (the "Motion") filed by Creditor Serena Ackerman (the "Creditor"), as well as Debtor's Response to Motion to Dismiss Chapter 7 Case (the "Response") filed by Daniel Merkel (the "Debtor"). After determining that an evidentiary hearing was required in order to address the issues raised in the Motion and the Response, the court conducted an evidentiary hearing in this matter on May 25, 2018 (the "Evidentiary Hearing").
I. Introduction
In this contested matter, the court must decide whether "cause" exists to dismiss the Debtor's bankruptcy case pursuant to 11 U.S.C. § 707(a). The Creditor is the holder of the largest unsecured claim filed against the Debtor, and maintains that this chapter 7 bankruptcy case was commenced solely to thwart collection efforts on a judgment she obtained for damages arising from a vehicular accident with the Debtor. In her view, the Debtor's prepetition conduct and the filing of the chapter 7 case constitute bad faith which can serve as grounds for dismissal under § 707(a). In response, the Debtor admits that bad faith can serve as cause for dismissal under § 707(a), but argues that the Debtor's conduct does not rise to the type of misconduct that warrants dismissal of a chapter 7 bankruptcy case.
Having considered the Motion, the Response, the relevant law, and the record in this case, being otherwise fully advised in the premises, and for the reasons explained below, the court holds in favor of the Debtor and concludes that the Creditor has failed to meet her burden of proof under § 707(a) to dismiss this chapter 7 case. The Motion will, therefore, be denied. This Memorandum Decision and Order will constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable to this contested matter by Bankruptcy Rule 9014(c).
II. Factual Background.
The Debtor is a mechanic. He is paid on an hourly basis, and used his pay stubs to report his income on his schedules filed in his bankruptcy case. According to the Debtor's amended schedules (ECF No. 16), the Debtor's monthly income is $ 1,709.67 and his monthly expenses total $ 1,704.00. Occasionally, the Debtor is able to supplement his income by obtaining small side jobs, for which he is paid in cash, but the Debtor testified that he was not able to secure any side jobs for the six months prior to the petition date. The Debtor testified that, prior to his bankruptcy case, he had never established an individual retirement account, nor had been able to open a 401(k) account.
During his testimony, the Debtor admitted that he filed his bankruptcy case on October 23, 2017 in order to clear the judgment debt he owed the Creditor and to recover his driving privileges. Although he initially was unable to recall who had been at fault in the car accident with the Creditor, the Debtor finally recalled he *610 had been ticketed on May 23, 2013 for careless and aggressive driving, when he improperly passed a stopped vehicle in an attempt to improperly or unlawfully turn as a traffic light was turning from yellow to red. (Creditor's Exhibit 6). As a result of the accident, the Creditor's vehicle t-boned the Debtor's 2003 Ford truck, but the Creditor was not cited for the accident.
After the accident, the Creditor filed a complaint against the Debtor. The Debtor did not answer the complaint nor did he appear in the action. The Debtor testified that he didn't think it was necessary for him to appear in the action, and he was unable to afford counsel to represent him in the action. Further, the Debtor stated he was unaware that a judgment had been entered against him. However, the Debtor did list the Creditor in the Debtor's schedules as a holder of a general unsecured claim in the amount of $ 220,000 (the "Judgment"). (ECF No. 1). In light of the Debtor's limited financial resources, he admitted that he made no attempt to pay the Judgment prepetition, nor did he make any effort to settle the Creditor's claim.
According to the Debtor's schedules, there is only one other unsecured creditor, namely State Farm Fire and Casualty, who holds a general unsecured claim in the amount of $ 20,899.55. (ECF No. 1). The Debtor did not list any creditors holding a secured or priority claim in his schedules. Id.
Initially, the Debtor failed to disclose his ownership of a motorcycle on his schedules, but later filed amended schedules in the bankruptcy case on January 10, 2018 that disclosed the motorcycle. (ECF No. 16). The Debtor testified that he had forgotten to list the motorcycle on his original schedules because the motorcycle was not working, and he had previously transferred it to a cousin "a while back." However, given that the motorcycle was titled in the Debtor's name, when the Debtor was reminded of its existence, he caused the schedules to be amended to reflect his ownership of a 2005 Honda motorcycle with an estimated value of $ 500.
The Debtor also had accounts with Matco and Snap-On that he used to buy tools on credit. From the Debtor's testimony, as well as the credit report and the bank statements introduced into evidence at the evidentiary hearing (Ex. 1 and 11), it is unclear whether the Debtor had an outstanding debt owed to Matco and Snap-On as of the petition date, or whether he continued to owe these tool suppliers a pre-petition balance that he paid off post-petition. In any event, neither Matco nor Snap-On were listed as creditors on the Debtor's schedules. (ECF No. 1). The Debtor's bank statements indicated he was remitting $ 100 payments every two weeks to Matco and $ 40 payments every two weeks to Snap-On both before and after the petition date of the Debtor's bankruptcy case (Creditor's Exhibit 1), but no evidence was presented to the court as to whether the post-petition payments were in respect of pre-petition balances or for new purchases of tools post-petition.
The original deadline for filing objections to the Debtor's discharge or dischargeability of debt was January 29, 2018. The Creditor filed one motion to extend the deadline (ECF No. 19), which was granted by the court (ECF No. 24), resulting in the extension of the deadline to commence an action objecting to discharge or dischargeability pursuant to 11 U.S.C. §§ 523 and/or 727 to March 30, 2018. However, prior to the extended deadline, the Creditor did not commence a proceeding seeking to withhold the Debtor's discharge or to determine the dischargeability of the Judgment.
*611 III. Procedural Background
The Creditor filed the Motion seeking to dismiss the Debtor's chapter 7 case under § 707(a) and (b). In the Creditor's view, the Debtor's prepetition conduct, as well as the Creditor's characterization of the Debtor's bankruptcy case as essentially a two-party dispute, constitutes "cause" for the court to make a finding of "bad faith" and to order dismissal of the Debtor's bankruptcy case under § 707(a). With respect to § 707(b), the Creditor ultimately conceded that the Judgment does not constitute a "consumer debt", in light of a number of bankruptcy courts holding that debt incurred from the negligent operation of an automobile is not consumer debt. In re Alvarez , 57 B.R. 65, 66 (Bankr. S.D. Fla. 1985) ; In re Ajunwa , No. 11-11363 (ALG), 2012 WL 3820638, at *8 (Bankr. S.D.N.Y. 2012). Accordingly, the Creditor withdrew her request to dismiss the case pursuant to § 707(b).
The Debtor filed the Response to the Motion, contending that the Debtor's bankruptcy case was not filed in bad faith, and insisting that the facts in this case do not rise to the level of conduct that constitutes "bad faith" and justifies dismissal of the Debtor's bankruptcy case.
The court held the Evidentiary Hearing and heard arguments on the Motion and the Response. The only witness called by the Creditor at the Evidentiary Hearing was the Debtor, and only the Creditor introduced documentary evidence at the Evidentiary Hearing. At the conclusion of the Evidentiary Hearing, the court took the matter under advisement.
IV. Jurisdiction
The court has jurisdiction over the Motion under 28 U.S.C. § 1334(b). The court has authority to enter this order pursuant to 28 U.S.C. § 157 and the standing order of reference in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).
V. Discussion
Under § 707(a), a chapter 7 case may only be dismissed for "cause." Three nonexclusive illustrations of cause are listed in § 707(a), including unreasonable delay by the debtor that is prejudicial to creditors, nonpayment of any fees or charges required under chapter 123 of title 28, and, upon motion by the United States Trustee, failure of a debtor in a voluntary case to timely file the information required under § 521(a)(1). None of the illustrative examples are applicable in this case. Instead, the court must determine whether cause for dismissal exists based upon the record evidence introduced in this case pertaining to the Debtor's prepetition conduct, which includes actions resulting in a citation for aggressive and careless driving, entry of the Judgment, the filing of the bankruptcy case to avoid payment of the Judgment, and the irregularities arising from the omission of an asset and certain liabilities in the Debtor's schedules.
The controlling authority in the Eleventh Circuit on what constitutes "cause" for dismissal under § 707(a) is In re Piazza , 719 F.3d 1253 (11th Cir. 2013). In Piazza , the Eleventh Circuit held that "the power to dismiss a bankruptcy case 'for cause' in § 707(a) includes the power to involuntarily dismiss a Chapter 7 case based on prepetition bad faith." Id. at 1261. Moreover, the Piazza court found that, "a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under § 707(a). The totality-of-the-circumstances inquiry looks for 'atypical' conduct ... that falls short of the 'honest and forthright invocation of the Bankruptcy Code's protections.' " Id. at 1271 (internal citation omitted). A court evaluating whether bad faith has occurred is required to examine whether a debtor's intentional acts or *612 omissions to act "constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." Id. at 1272. A bankruptcy court, as a trier of fact, must carefully examine the conduct of the debtor and identify facts and bases which support a finding of bad faith under § 707(a).
The Eleventh Circuit in Piazza noted that the bankruptcy court, in its role as the trier of fact, had analyzed whether the debtor had engaged in conduct which constituted bad faith by considering the framework adopted by a bankruptcy court in the Middle District of Florida in In re Baird , 456 B.R. 112 (Bankr. M.D. Fla. 2010). In Baird , the court listed the following factors as indicative of bad faith:
(i) the debtor reduced his creditors to a single creditor shortly before the petition date;
(ii) the debtor made no lifestyle adjustments or continued living a lavish lifestyle;
(iii) the debtor filed the case in response to a judgment, pending litigation, or collection action;
(iv) there is an intent to avoid a large, single debt;
(v) the debtor made no effort to repay his debts;
(vi) the unfairness of the use of Chapter 7;
(vii) the debtor has sufficient resources to pay his debts;
(viii) the debtor is paying debts of insiders;
(ix) the schedules inflate expenses to disguise financial well-being;
(x) the debtor transferred assets;
(xi) the debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors;
(xii) the debtor employed a deliberate and persistent pattern of evading a single major creditor;
(xiii) the debtor failed to make candid and full disclosure;
(xiv) the debtor's debts are modest in relation to his assets and income; and
(xv) there are multiple bankruptcy filings or other procedural "gymnastics."
Id. at 614-15.
While the Eleventh Circuit declined to adopt the Baird factors, the court found that the bankruptcy court did not commit reversible error, nor did it apply an erroneous legal standard when it evaluated the debtor's conduct under the Baird framework, to reach the conclusion that the debtor in Piazza had exhibited bad faith.[1] Indeed, the Eleventh Circuit commented that the analysis undertaken by the bankruptcy court was essentially a totality-of-the-circumstances approach to evaluating the debtor's conduct.
This review of applicable caselaw brings us to an analysis of the Motion filed by the Creditor in the instant case. The Creditor has relied upon the Baird framework, and argues that a number of the Baird factors are applicable to the Debtor's pre-petition conduct. Specifically, the Creditor has asserted that:
• the Debtor filed this bankruptcy case in response to entry of the Judgment and collection efforts undertaken by the Creditor;
*613 • the primary focus of this bankruptcy case is to obtain a discharge of a single large debt;
• the Debtor did not make any effort to repay the debt evidenced by the Judgment;
• the Debtor had transferred a motorcycle to a relative;
• the Debtor failed to make candid and full disclosure about the motorcycle and the "criminal nature" behind a claim in favor of State Farm and Casualty Insurance;
• the Debtor evaded the Judgment by not appearing in the action brought by the Creditor or at mediation;
• the Debtor failed to modify his lifestyle;
• allowing the Debtor to use chapter 7 to escape his liability is unfair to the Creditor; and
• the bankruptcy case is essentially a two-party dispute between the Creditor and the Debtor.
The Debtor has responded to the Motion by suggesting that the Debtor's conduct does not rise to the level of conduct that warrants a finding of prepetition bad faith. The Debtor readily admits that his conduct resulted in (i) damages to the Creditor, (ii) entry of the Judgment against him, and (iii) suspension of his driving privileges due to nonpayment of the Judgment. In addition, the Debtor concedes that he filed this bankruptcy case primarily to restore his driving privileges. The Debtor argues, however, that most bankruptcy cases are filed because a single aggressive creditor is pursuing a debtor; and that caselaw decided under chapter 11 involving two-party disputes is irrelevant in determining whether a chapter 7 case should be dismissed. As proof of lack of bad faith, the Debtor points out that he immediately filed an amendment to his schedules to reflect his ownership of a motorcycle, when he was reminded about gifting the non-functioning motorcycle to his cousin without transferring the title to his cousin. Finally, the Debtor suggests that if a claim is subject to discharge, a creditor cannot seek dismissal of a chapter 7 case based upon a debtor's "unseemly activity."
Based upon the arguments of the parties, and the record evidence presented at the Evidentiary Hearing, as well as applicable caselaw, the court has no choice but to agree with the Debtor. Although the Motion contains numerous allegations of prepetition improper conduct by the Debtor, the Creditor failed to introduce evidence of this conduct at the Evidentiary Hearing. The record evidence introduced by the Creditor to support her allegation of improper prepetition conduct by the Debtor was slim. The exhibits introduced by the Creditor consisted of (i) a single traffic ticket, (ii) the Debtor's amended schedules filed in this bankruptcy case, (iii) the Debtor's bank statements for the period of June 21, 2017 through November 20, 2017, (iv) the Debtor's 2015 tax return, and (v) a credit report on the Debtor.[2] The testimony elicited at the Evidentiary Hearing from the Debtor, as the sole witness called by the Creditor, was restricted to the following areas of inquiry:
• the accident with the Creditor for which the Debtor was ticketed for careless and aggressive driving;
• the Debtor's failure to defend himself in the lawsuit brought by the Creditor that resulted in the Judgment;
*614 • the Debtor's ownership of a non-working motorcycle that the Debtor was reflected on an amendment to his schedules;
• the Debtor's infrequent receipt more than six months prior to the petition date of cash for performing side jobs; and
• payments from the Debtor's bank account for tools that the Debtor may or may not have acquired prior to the petition date in this case.
No evidence was introduced at the Evidentiary Hearing with respect to any other vehicular accidents which the Debtor may have caused, or other traffic citations that the Debtor may have received. No evidence was presented relating to a lavish lifestyle maintained by the Debtor; in fact, the evidence from the Debtor's schedules indicates that his monthly salary is approximately $ 1,709, and after paying living expenses, he is left with approximately $ 5.00 each month. Given that amount of net monthly income, it is clear to the court why the Debtor failed to retain counsel to represent him in the action brought by the Creditor, and failed to pay any portion of the Judgment.
In short, the Creditor failed to make an adequate showing at the Evidentiary Hearing in support of many of the allegations in the Motion relating to the Debtor's alleged improper prepetition conduct. As a result, the court lacks sufficient evidence in the record for a finding of bad faith warranting dismissal of this bankruptcy case. While the Creditor clearly believes that discharge of the Judgment as the result of the entry of an order of discharge is unfair to her, this is the type of relief that a debtor who has not engaged in prepetition bad faith is entitled to receive.
Other courts have frequently held that filing for bankruptcy in order to counter the collection efforts of one creditor, without further indicia of bad faith, is not sufficient to warrant dismissal under § 707(a). In re Kane & Kane , 406 B.R. 163, 170 (Bankr. S.D. Fla. 2009) ; In re Chovev , 559 B.R. 339, 349-49 (Bankr. E.D.N.Y. 2016), at 348-349 ; In re Bushyhead , 525 B.R. 136, 151-52 (Bankr. N.D. Okla. 2015) ; Ajunwa , 2012 WL 3820638, at *7 ; In re Aiello , 428 B.R. 296, 301-03 (Bankr. E.D.N.Y. 2010).
As a result of these findings, the court holds that, based upon the totality of the circumstances in this case, grounds do not exist to warrant a dismissal of the case for cause predicated on prepetition bad faith.
What is troubling to the court is that counsel for the Creditor admitted that the Creditor's goal in filing the Motion was two-fold: first, the Creditor wanted to avoid entry of an order of discharge of the Judgment in this bankruptcy case; and second, the Creditor wanted the existence of the unpaid Judgment to eliminate the Debtor's ability to reinstate his driver's license.
The Creditor might have been able to avoid the discharge of the Judgment if the Creditor had filed an adversary proceeding against the Debtor under § 523(a)(6) of the Bankruptcy Code, seeking to avoid the Debtor's discharge as a result of a willful and malicious injury by the Debtor to the Creditor. The Creditor did file a motion to extend the time permitted under Federal Rule of Bankruptcy Procedure 4007(c) to file a complaint under § 523, which was granted by order of the court extending the deadline to file a non-dischargeability complaint until March 30, 2018 (ECF Nos. 19 & 24). However, the Creditor specifically elected not to file a non-dischargeability action against the Debtor within the extended deadline, and instead chose to rely on the possibility of the court ordering that the bankruptcy case should be dismissed, *615 as requested in the Motion, without entry of an order of discharge.[3]
While the net effect of the court's ruling denying the Motion is that the Debtor is entitled to entry of an order of discharge in this bankruptcy case, that result does not necessarily mean that the Debtor's driver's license privilege will be reinstated. Reinstatement will require further action by the State of Florida, and will likely entail considerations beyond the scope of this court's analysis.
The court appreciates that the Creditor's secondary goal in filing the Motion was to avoid restoration of the Debtor's driving privileges. However, this court is not the proper forum in which to determine whether the Debtor's driver's license should be reinstated. That determination is properly left with the State of Florida. The court expects that the requisite inquiry by the State of Florida will include an examination of the Debtor's driving record (which was never provided to this court during the Evidentiary Hearing) to determine if it is appropriate to reinstate the Debtor's driver's license, notwithstanding the discharge of the Creditor's claim.
Accordingly, the court hereby ORDERS AND ADJUDGES that the Creditor's Motion is DENIED for the reasons stated above.
ORDERED.

In Piazza , the debtor filed bankruptcy principally to avoid paying a large single debt, but continued paying debts of insiders, transferred thousands of dollars each month to his wife, co-signed a relative's loan, leased a new luxury vehicle for himself, and had sufficient resources to repay at least a portion of his debts. Id. at 1273-1274.

Although the Debtor's exhibit binder contained additional documents, only those items specifically listed were introduced into evidence. Consequently, the court is constrained to consider only these documents.

The court did inadvertently enter an order of discharge on April 10, 2018, while the Motion was pending and prior to the Evidentiary Hearing. The Creditor filed a motion to vacate the order granting discharge of Debtor, which the court granted pursuant to the Order Reopening Case and Vacating Final Decree and Discharge of Debtor (ECF Nos. 27, 29, & 32, respectively).