[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12899
_____

D.C. Docket No. 0:11-cv-62569-KMM,
BKCY No. 10-40807-JKO

In Re:  CRAIG PIAZZA,

Debtor.

_____

CRAIG PIAZZA,

Plaintiff-Appellant,

versus

NUETERRA HEALTHCARE PHYSICAL THERAPY, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 26, 2013)

Before MARCUS, BLACK and SILER,[*] Circuit Judges.

BLACK, Circuit Judge:

Craig Piazza appeals the district court's order affirming the bankruptcy court's dismissal of his Chapter 7 bankruptcy petition for bad faith under 11 U.S.C. § 707(a). Piazza contends the bankruptcy court erred because § 707(a) permits dismissal only "for cause" and prepetition bad faith does not constitute "cause" for dismissal. In the alternative, Piazza argues, even if bad faith does provide "cause" for involuntary dismissal under § 707(a), the record does not support the bankruptcy court's finding of bad faith in this case. We affirm the district court's affirmance of the bankruptcy court's order.

## I.  FACTS AND PROCEDURAL HISTORY

Piazza voluntarily filed for Chapter 7 bankruptcy on October 8, 2010, seeking to discharge debts he identified as primarily business related. Piazza also filed Schedules A–J[1] and other documents describing his income and debts. According to Piazza's Schedule F, his unsecured debt totaled roughly $319,683. More than half of that debt, approximately $161,383 not including interest, was

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1] Schedule A (Real Property); Schedule B (Personal Property); Schedule C (Property Claimed as Exempt); Schedule D (Creditors Holding Secured Claims); Schedule E (Creditors Holding Unsecured Priority Claims); Schedule F (Creditors Holding Unsecured Nonpriority Claims); Schedule G (Executory Contracts and Unexpired Leases); Schedule H (Codebtors); Schedule I (Current Income of Individual Debtor); and Schedule J (Current Expenditures of Individual Debtor). Piazza subsequently filed amended versions of Schedules, B, C, I, and J.

owed to a single creditor:  Appellee, Nueterra Healthcare Physical Therapy, LLC (Nueterra).

In January 2011, Nueterra moved the bankruptcy court to dismiss Piazza's case.  Nueterra's motion revealed that Piazza's debt arose from a state court judgment entered against him for failure to pay a business guarantee, and that it had attempted to collect on that judgment without success for over two years.  Frustrated with Piazza's recalcitrance, the state court demanded he produce documents justifying his failure to pay by October 9, 2010, or face adverse presumptions at subsequent hearings.  According to Nueterra, Piazza's bankruptcy filing on October 8, 2010, was simply an effort to avoid paying the state court judgment.  Nueterra argued that, on the "totality of the circumstances," Piazza's Chapter 7 petition should be dismissed for bad faith.

In response, Piazza acknowledged that his debt to Nueterra "may well have been the motivating factor for filing bankruptcy" when he did.  But, Piazza argued, "[f]iling bankruptcy to avoid a garnishment is common practice and hardly justifies a claim of bad faith."  Piazza contended that because Nueterra's state-court claim did not allege fraud, and because the state court judgment was the result of a default rather than "vexatious litigation," the bankruptcy court should not find bad faith.

3

After hearing oral argument, the bankruptcy court granted Nueterra's motion to dismiss, concluding that "cause" existed to dismiss Piazza's case pursuant to § 707(a) based on bad faith. *In re Piazza (Piazza I)*, 451 B.R. 608, 616–17 (Bankr. S.D. Fla. 2011). Although Neuterra's motion relied primarily on § 707(b) rather than § 707(a),[2] the bankruptcy court found Nueterra's "totality of the circumstances arguments . . . implicitly ask[ed] the court to dismiss this case" for "cause" under subsection (a). *Id.* at 611. Additionally, the bankruptcy court determined that the finding of bad faith should be guided by a list of fifteen non-dispositive factors. Under that framework, bad faith may be found when:

> (i) the debtor reduced his creditors to a single creditor shortly before the petition date;
>
> (ii) the debtor made no life-style adjustments or continued living a lavish life-style;
>
> (iii) the debtor filed the case in response to a judgment, pending litigation, or collection action;
>
> (iv) there is an intent to avoid a large, single debt;

---

[2] It is not relevant to the outcome of this appeal that Nueterra's motion to the bankruptcy court relied principally upon 11 U.S.C. § 707(b) rather than § 707(a). First, Nueterra's motion expressly references "a debtor's bad faith" providing grounds "to dismiss a chapter 7 case for cause under § 707(a)." Second, dismissal under § 707(a) was raised before the bankruptcy court at oral argument. Third, § 707(a) authorizes dismissal "for cause" and, with the exception of § 707(a)(3), does not require that a "party in interest" request dismissal. *See* 11 U.S.C. § 707(a)(3) (requiring "a motion by the United States trustee" to dismiss for "failure of the debtor in a voluntary case to file . . . the information required by" 11 U.S.C. § 521(a)(1)). Therefore, bankruptcy courts may dismiss cases sua sponte "for cause" in the absence of a motion, so long as the court does not solely invoke § 707(a)(3). *Cf. Walden v. Walker (In re Walker)*, 515 F.3d 1204, 1212 (11th Cir. 2008) (holding that 11 U.S.C. § 324 authorizes bankruptcy courts to remove a trustee sua sponte because that statute permits dismissal "for cause" and "does not require that a 'party in interest' request the removal").

(v) the debtor made no effort to repay his debts;

(vi) the unfairness of the use of Chapter 7;

(vii) the debtor has sufficient resources to pay his debts;

(viii) the debtor is paying debts of insiders;

(ix) the schedules inflate expenses to disguise financial well-being;

(x) the debtor transferred assets;

(xi) the debtor is over-utilizing the protections of the Bankruptcy Code
     to the unconscionable detriment of creditors;

(xii) the debtor employed a deliberate and persistent pattern of evading
      a single major creditor;

(xiii) the debtor failed to make candid and full disclosure;

(xiv) the debtor's debts are modest in relation to his assets and income;
      and

(xv) there are multiple bankruptcy filings or other procedural
     "gymnastics."

*Id.* at 614–15 (quoting *In re Baird*, 456 B.R. 112, 116–17 (Bankr. M.D. Fla.

2010)).

Applying those factors, the bankruptcy court found bad faith based on six of

the fifteen criteria.  First, factors (iii), (iv), (viii), and (xii) supported a finding of

bad faith, as Piazza filed bankruptcy "in response to," and in order "to avoid,"

Nueterra's state-court judgment—a "large, single debt" Piazza had "deliberate[ly]

and persistent[ly]" evaded while at the same time "paying debts of insiders."

5

*Piazza I*, 451 B.R. at 616. Piazza's debt to Nueterra was substantially larger than those he owed to other creditors. Out of more than $319,000 in total debt, Piazza owed Nueterra $161,383. By comparison, Piazza's next largest debt was a $51,948 non-dischargeable student loan. Also, while evading the state-court judgment for more than two years, Piazza "transfer[red] significant amounts to his wife" and paid his great aunt's mortgage. *Id.* at 616.

Second, factors (ii) and (vii) supported a finding of bad faith, because Piazza "failed to make life-style adjustments" and "had sufficient resources to pay his debts." *Id.* at 616–17. Regardless of whether Piazza's lifestyle was "lavish," it was uncontroverted he had made no adjustments despite his substantial debt to Nueterra. *Id.* at 617. Additionally, it was clear Piazza had the "ability to repay at least a portion of his debts" considering he leased a luxury vehicle and "transferred thousands of dollars to his wife which could have been used to repay his creditors." *Id.* In the court's view, Piazza's bankruptcy petition was not the result of a "sudden financial disaster" or "medical crisis" but rather "was timed perfectly to" impede Nueterra's collection efforts on the state-court judgment. *Id.* at 616.

Following the bankruptcy court's order, Piazza moved for rehearing. The bankruptcy court denied that motion, reaffirming its initial holding that bad faith constitutes "cause" for dismissal under § 707(a) and that its factual finding of bad faith was not manifestly erroneous. *See In re Piazza (Piazza II)*, 460 B.R. 322, 328

6

(Bankr. S.D. Fla. 2011).  Subsequently, the district court affirmed the bankruptcy court on all issues.  *Piazza v. Nueterra Healthcare Physical Therapy, LLC (Piazza III)*, 469 B.R. 388, 389 (S.D. Fla. 2012).  This appeal followed.

## II.  DISCUSSION

In a bankruptcy appeal, we sit as the second court of review of the bankruptcy court's judgment.  *Equitable Life Assur. Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1383–84 (11th Cir. 1990).  Like the district court, we review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  *Englander v. Mills (In re Englander)*, 95 F.3d 1028, 1030 (11th Cir. 1996).

*A.  Prepetition Bad Faith and "For Cause" Dismissal under § 707(a)*

The threshold issue in this case is whether prepetition bad faith constitutes "cause" to dismiss involuntarily a Chapter 7 petition under § 707(a).  This is a question of first impression in the Eleventh Circuit, and one that has divided our sister circuits.[3]  We conclude that, based on the ordinary meaning of the statutory

---

[3] *Compare Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000) (holding "cause" under § 707(a) permits a dismissal based on bad faith), *and Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997) (suggesting, but not explicitly holding, that "for cause" dismissal under § 707(a) could include a lack of "good faith" and should be determined on a "case by case" basis to determine if "an abuse constituting cause has occurred"), *and Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir. 1991) (holding "cause" under § 707(a) includes bad faith), *with Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1193–94 (9th Cir. 2000), *partially superseded by statute on other grounds*, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23 (rejecting "the 'bad faith' label in favor of simply examining the actions of the debtor that are complained of" and determining whether "cause" exists to dismiss under § 707(a)), *and Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir. 1994) (holding that, although many grounds for

language and relevant principles of statutory construction, the power to dismiss

"for cause" in § 707(a) includes the power to involuntarily dismiss a Chapter 7

case based on prepetition bad faith.

### 1. The Ordinary Meaning of "For Cause"

We begin our interpretation of a statute with its text.  *Harris v. Garner*, 216

F.3d 970, 972–73 (11th Cir. 2000) (en banc).  Section 707(a) provides that a

bankruptcy court "may dismiss a case under this chapter only after notice and a

hearing and only *for cause*, including"—

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of
> title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days
> or such additional time as the court may allow after the filing of the
> petition commencing such case, the information required by
> paragraph (1) of section 521(a), but only on a motion by the United
> States trustee.

11 U.S.C. § 707(a) (emphasis added).

The Bankruptcy Code does not define "for cause," and the three enumerated

examples in § 707(a) are illustrative, not exhaustive.  *See, e.g.*, 11 U.S.C. § 102(3)

(defining "including," for purposes of the Bankruptcy Code as "not limiting"); *see*

*also Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 743 (11th Cir. 2000)

(noting the examples of "cause" are "nonexclusive").  In the absence of a statutory

---

dismissal under § 707(a) may be characterized as "bad faith," "bad faith" should not be a free-standing "cause" for dismissal).

definition, we interpret phrases in accordance with their ordinary meaning.  *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47, 109 S. Ct. 1597, 1607–08 (1989).  In determining the ordinary meaning of statutory phrases in the Bankruptcy Code, courts look to dictionary definitions.  *See, e.g.*, *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 724 (2011); *Keppel v. Tiffin Sav. Bank*, 197 U.S. 356, 362, 25 S. Ct. 443, 445 (1905).

When Congress enacted § 707's "for cause" language in 1978, *Black's Law Dictionary* defined "cause," in relevant part, simply as "reason" or "justification." *Black's Law Dictionary* 279 (4th ed. 1968).  Subsequent editions of *Black's Law Dictionary* have maintained that basic understanding of "cause."  *See, e.g.*, *Black's Law Dictionary* 200 (5th ed. 1979) (defining "cause" as "[a] reason for an action" or a "ground of a legal action").  The most recent edition, in particular, defines "for cause" straightforwardly as "[f]or a legal reason or ground."  *Black's Law Dictionary* 717 (9th ed. 2009).  This understanding of "cause," moreover, is not limited to legal dictionaries.  *See, e.g.*, *Funk & Wagnalls College Standard Dictionary* 198 (1941) (defining "cause" as "[a]ny rational ground for choice or action; reason").  Non-legal sources from 1978 to the present have consistently defined "cause" as "[g]ood or sufficient reason," *American Heritage Dictionary, New College Edition* 214 (6th ed. 1976), as "[g]ood, proper, or adequate ground of action," 2 *Oxford English Dictionary* 1000 (2d ed. 1989), or as "reasonable

9

grounds for doing . . . something," *New Oxford American Dictionary* 272 (3d ed. 2005).

Although these definitions vary in their precise terms, the common thread among them is unmistakable:  the ordinary meaning of "cause" is adequate or sufficient reason.  Indeed, this understanding of "cause" comports not only with dictionary definitions but also with judicial understandings of that term.  *See, e.g.*, *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (explaining that "for cause" in the Bankruptcy Code means "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process" (citing *In re Victory Constr. Co.*, 9 B.R. 549, 558–60 (Bankr. C.D. Cal. 1981), *vacated as moot on other grounds by*, *Hadley v. Victory Constr. Co. (In re Victory Constr. Co.)*, 37 B.R. 222 (B.A.P. 9th Cir. 1984))).  Thus, in applying § 707(a), we adhere to the ordinary meaning of "cause," as authorizing dismissal when adequate or sufficient reason exists for such an action.

The next question is whether prepetition bad faith falls within the ordinary meaning of "for cause" under § 707(a)—that is, whether such bad faith is an adequate or sufficient reason to dismiss involuntarily a Chapter 7 petition.  We hold that it is.  Bad-faith bankruptcy filings significantly burden the legal system in general and bankruptcy courts in particular.  In 2012, there were approximately 1.2

million bankruptcy filings in the United States.  *See* U.S. Bankruptcy Courts—

Cases Commenced During the 12-Month Period Ending December 31, 2012 (Table

F–2), *available at* http://www.uscourts.gov/uscourts/Statistics/Bankruptcy

Statistics/BankruptcyFilings/2012/1212_f2.pdf.  Of those, over 840,000 were

Chapter 7 filings.  *See id.*  Although these numbers do not tell us how many cases

were filed in bad faith, they do indicate we should not artificially limit the tools

Congress has given bankruptcy courts to protect their "jurisdictional integrity."  *Cf.*

*Little Creek*, 779 F.2d at 1072.  Considering bankruptcy courts may sanction

litigants for filing documents with "any improper purpose," *see* Fed. R. Bankr. P.

9011(b)(1), as well as "tak[e] any action . . . necessary or appropriate . . . to

prevent an abuse of process," *see* 11 U.S.C. § 105(a), we see no reason why

prepetition bad faith should not constitute an adequate or sufficient reason for

dismissal.  To hold otherwise would "create[] the appearance that such an abusive

practice is implicitly condoned by the [Bankruptcy] Code."  *Dinova v. Harris (In*

*re Dinova)*, 212 B.R. 437, 441 (B.A.P. 2d Cir. 1997) (internal quotation marks

omitted).

Accordingly, prepetition bad faith constitutes "cause" for involuntary

dismissal under § 707(a), because such conduct provides adequate or sufficient

reason to dismiss a debtor's case.  *See, e.g.*, *Tamecki v. Frank (In re Tamecki)*, 229

F.3d 205, 207 (3d Cir. 2000) (interpreting "cause" under § 707(a) to include bad

faith); *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir. 1991) (same).

### 2. *Piazza's Counterarguments to the Ordinary Meaning of "For Cause"*

Despite the clear, ordinary meaning of "for cause," Piazza contends prepetition bad faith does not fall within the ambit of § 707(a). In pressing this argument, Piazza invokes several canons of statutory construction. None of them applies in this case.

### a. *Limiting "For Cause" to its Specific Examples*

Piazza argues that, based on the *ejusdem generis* canon of interpretation, prepetition bad faith does not provide "cause" for dismissal under § 707(a), as it is not of the "same kind, class, or nature" as the three specifically enumerated examples. The three examples listed in § 707(a) articulate primarily objective criteria relating to postpetition procedural issues, while prepetition bad faith, Piazza argues, is "amorphous" and subjective. In Piazza's view, debtors are entitled to bankruptcy under Chapter 7 so long as their "debts were not incurred by prohibited means, and nothing is withheld from the Trustee."

We reject this contention for a number of reasons.[4] First, the specific examples in § 707(a) lend greater support to the conclusion that bad faith *does* fall

---

[4] As a technical matter, Piazza's reliance on the *ejusdem generis* canon is misplaced. That principle applies when general words follow an enumeration of specific items or classes. *Allen v. Thomas*, 161 F.3d 667, 671 (11th Cir. 1998) ("Under the *ejusdem generis* canon of

12

within the meaning of "for cause." *See, e.g.*, *McDow v. Smith*, 295 B.R. 69, 74–75 (E.D. Va. 2003) (reasoning that "a debtor's bad faith falls within the same class as the three illustrative examples of 'cause' enumerated in § 707(a)"). A debtor's "unreasonable delay, failure to pay required fees and failure to meet filing deadlines are all acts or omissions" that, "in the absence of inadvertence or excusable neglect," reflect a debtor's bad faith or "misuse of the bankruptcy process." *Id.* at 74; *see also id.* at 75 n.8 (interpreting bad faith and § 707(a)'s three examples "as intersecting subsets of the set of acts or omissions of a debtor that amount to abuse or misuse of the bankruptcy process"). Therefore, Piazza's reliance on the "kind, class, or nature" of the specific examples in § 707(a) undermines rather than supports his position.

Second, Piazza's constricted reading of § 707(a) contravenes the settled meaning of "for cause" elsewhere in the Bankruptcy Code. *See, e.g.*, *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373, 127 S. Ct. 1105, 1111 (2007)

---

construction, where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." (internal quotation marks omitted)). However, when general language, such as "including," *precedes* specific examples, the appropriate canon of statutory construction is *noscitur a sociis* or the associated-words canon. *See, e.g.*, *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1247 (11th Cir. 2008) (describing *noscitur a sociis* as "the commonsense principle that statutory terms, ambiguous when considered alone, should be given related meaning when grouped together"); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 205 (2012) ("In all contexts other than the pattern of specific-to-general, the proper rule to invoke is the broad associated-words canon, not the narrow *ejusdem generis* canon."). Nevertheless, even applying the appropriate principle of interpretation, Piazza's argument is unavailing.

("Bankruptcy courts . . . routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.'").  Aside from § 707(a), 11 U.S.C. §§ 1112(b) and 1307(c) permit dismissal "for cause."  Those provisions were enacted contemporaneously with § 707 in 1978, and share with § 707(a) similar or identical examples of "cause" for dismissal.[5]  And, as interpreted by the Supreme Court and nearly every federal court of appeals, "for cause" in §§ 1112(b) and 1307(c) includes bad faith or a lack of good faith.  *See, e.g.*, *Marrama*, 549 U.S. at 373–74, 127 S. Ct. at 1111 (interpreting "for cause" under 11 U.S.C. § 1307(c) as encompassing "prepetition bad-faith conduct"); *see also Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir. 1988) (interpreting "for cause" under 11 U.S.C. § 1112(b) as including a lack of good faith).[6]

---

[5] *Compare* § 707(a)(1), (2) (listing as examples of "cause" for dismissal "(1) unreasonable delay by the debtor that is prejudicial to creditors" and "(2) nonpayment of any fees and charges required under chapter 123 of title 28"), *with* § 1307(c)(1), (2) (same), *and* § 1112(b)(4)(F), (K) (listing as examples of "cause" for dismissal "(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" and "(K) failure to pay any fees or charges required under chapter 123 of title 28").

[6] *See, e.g.*, *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 660 (5th Cir. 2010) (interpreting "for cause" in 11 U.S.C. § 1307(c) to include situations in which "the debtor has acted in bad faith or abused the bankruptcy process"); *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 259 (4th Cir. 2007) (equating "for cause" with "bad faith" for purposes of 11 U.S.C. § 362); *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999) ("[A] Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith."); *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1309–12 (2d Cir. 1997) (holding that bad faith is "cause" to dismiss under § 1112(b)); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996) (reading "for cause" in § 1307(c) as allowing dismissal based on bad faith, even

14

The settled meaning of "for cause" is significant.  *See, e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 143, 114 S. Ct. 655, 660 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").  As the Supreme Court has held, the Bankruptcy Code must, when possible, be interpreted such that "equivalent words have equivalent meaning." *Cohen v. de la Cruz*, 523 U.S. 213, 220, 118 S. Ct. 1212, 1217 (1998).  Interpreting "for cause" in § 707(a) to mean something different than what it means elsewhere in the Bankruptcy Code would create unnecessary incoherence.  *See, e.g.*, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 1301 (2000) (noting that courts must interpret statutes as "symmetrical and coherent regulatory scheme[s]"); *cf. Hamilton v. Lanning*, 130 S. Ct. 2464, 2475–76 (2010)

though "Chapter 13 contains no explicit good faith requirement"); *Molitor v. Eidson (In re Molitor)*, 76 F.3d 218, 220–21 (8th Cir. 1996) (interpreting "for cause" under § 1307(c) to include dismissal based on "bad faith"); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (interpreting "for cause" in 11 U.S.C. § 1112(b) as permitting dismissal for "a lack of good faith in filing a Chapter 11 petition" even though § 1112(b) "does not explicitly require that cases be filed in 'good faith'"); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (reading "for cause" in § 1307(c) to include bad faith); *Gier v. Farmers State Bank of Lucas, Kan. (In re Gier)*, 986 F.2d 1326, 1329–30 (10th Cir. 1993) (construing "for cause" under § 1307(c) to authorize dismissal based on bad faith); *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (concluding that "a good faith filing requirement is implicit in several specific provisions of the bankruptcy code"—*i.e.*, those permitting "for cause" dismissal); *In re Smith*, 848 F.2d 813, 816 n.3 (7th Cir. 1988) (interpreting the "for cause" language of § 1307(c) to include a dismissal premised on a debtor's bad faith in filing the petition); *In re Madison Hotel Assocs.*, 749 F.2d 410, 426 (7th Cir. 1984) ("It is generally recognized that . . . the lack of . . . good faith constitutes 'cause,' sufficient for dismissal under 11 U.S.C. § 1112(b)." (citations omitted)); *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005) (reaffirming "it is well established that lack of good faith (or bad faith) is 'cause' for dismissal . . . under § 1307(c)").

(rejecting an interpretation of the Bankruptcy Code that "would produce senseless results").

Likewise, Piazza's argument against adopting the settled meaning of "for cause" runs counter to both the original understanding of that term in § 707 as well as more than a century of federal bankruptcy law and policy. With only minor exception, the power of bankruptcy courts under § 707 to dismiss "for cause" has, since its enactment, been understood by courts as the power to prevent "manifestly inequitable result[s]." *See In re Pagnotta*, 22 B.R. 521, 522–23 (Bankr. Md. 1982) (applying § 707 in a voluntary dismissal case); *see also In re Khan*, 35 B.R. 718, 719–20 (Bankr. Ky. 1984) (interpreting "for cause" in § 707 to include bad faith); *In re Sacramento Metro. Real Estate Investors*, 28 B.R. 228, 229–30 (Bankr. E.D. Cal. 1983) (same). *But see Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1192–94 (9th Cir. 2000) (holding bad faith does not constitute "cause" for dismissal under § 707(a)), *partially superseded by statute on other grounds*, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23. Additionally, every federal bankruptcy statute since the nineteenth century has "incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *Little Creek*, 779 F.2d at 1071; *cf. Neal v. Clark*, 95 U.S. 704, 709 (1877) (emphasizing that Congress's "object and intention . . . in enacting"

16

bankruptcy laws was to relieve "*honest* citizen[s] . . . from the burden of hopeless insolvency" (emphasis added)).  In this case, there is no "clear indication that Congress intended" the stark departure from "past bankruptcy practice" that Piazza would have this Court adopt.  *See Cohen*, 523 U.S. at 221, 118 S. Ct. at 1218.

Piazza argues, however, that we should abandon the settled meaning of "for cause" in this case because Chapter 7 differs from Chapters 11 and 13.  Unlike § 707(a) in Chapter 7, Piazza contends "for cause" in §§ 1112(b) and 1307(c) should include bad faith because Chapters 11 and 13 explicitly require "good faith" and contemplate an ongoing relationship between the debtor and creditor.  *See* 11 U.S.C. § 1129(a)(3) (requiring reformation plans under Chapter 11 to be "proposed in good faith"); § 1325(a)(3) (requiring reformation plans under Chapter 13 to be "proposed in good faith").  By contrast, he argues, Chapter 7 liquidation involves no such relationship, and therefore the debtor's good or bad faith is immaterial.

Although some courts have found this argument persuasive, *see Padilla*, 222 F.3d at 1193–94, we do not.  In *Marrama*, the Supreme Court made clear bad faith is pertinent in all Chapters of the Bankruptcy Code, regardless of whether a provision contains an explicit good-faith filing requirement.  *See Marrama*, 549 U.S. at 373–75, 127 S. Ct. at 1110–12; *see also Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 773 n.12 (9th Cir. 2008) (citing *Marrama* for the proposition that "even otherwise unqualified rights in the debtor are subject to

17

limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process").  Accordingly, there is no basis for Piazza's assertion that bad faith is immaterial in one chapter simply because it is particularly salient in another.  Moreover, the absence of an ongoing *post*-petition relationship between the debtor and creditor in Chapter 7 does not in any way suggest a debtor's *pre*-petition bad faith can never provide "cause" to dismiss.  Like §§ 1112(b) and 1307(c), § 707(a)'s specific examples "d[o] not preclude consideration of unenumerated factors in determining 'cause'"—bankruptcy courts are free to "'consider other factors as they arise, and to use [their] equitable powers to reach an appropriate result in individual cases.'"  *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (quoting H.R. Rep. No. 595, at 406, *reprinted in* 1978 U.S.S.C.A.N. 5963, 6362) (holding that § 1112(b) is not limited to its enumerated examples of "cause").  We therefore decline Piazza's invitation to create unnecessary conflict in the Bankruptcy Code by giving the same statutory language different meanings.  *Cf. Hall v. United States*, 132 S. Ct. 1882, 1891 (2012) ("Absent any indication that Congress intended a conflict between two closely related chapters, we decline to create one.").

b.  *Argument Based on Superfluity*

Next, Piazza argues that interpreting "cause" to include bad faith renders superfluous other provisions of the bankruptcy code that contain an explicit bad

18

faith provision.  In particular, Piazza contends that such an interpretation of "cause" in § 707(a) renders superfluous § 707(b), which calls for courts to consider "whether the debtor filed [her] petition in bad faith" when determining whether granting relief would constitute an "abuse" of the bankruptcy laws.  *See* § 707(b)(3)(A).

Piazza's argument is unpersuasive.  Although we must, when possible, interpret statutory language so as to give effect to each provision, *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122 S. Ct. 528, 535 (2001), Piazza's claims of superfluity in this case are overstated.  "Redundancies across statutes are not unusual events in drafting," and because "there is no 'positive repugnancy' between" subsection (a) and (b) we "must give effect to both."  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S. Ct. 1146, 1149 (1992) (citation omitted); *see also Witcher v. Early (In re Witcher)*, 702 F.3d 619, 621–22 (11th Cir. 2012) (holding no superfluity results from considering "debtors' ability to pay their debts under" two different provisions of § 707(b)); Kenneth N. Klee, *Bankruptcy and the Supreme Court* 20 (2008) (noting that, for purposes of the Bankruptcy Code, "[r]edundancy is not the same as surplusage").

In essence, Piazza argues that our interpretation makes it so that parties in interest will use subsection (a) as the primary device for dismissal under Chapter 7 and ignore subsection (b), thus rendering it superfluous.  But the material

differences between § 707(a) and (b) undermine Piazza's argument.  First, the provisions cover different types of debt.  Section 707(b) governs dismissal of Chapter 7 petitions involving "primarily consumer debts."  *See* § 707(b).  Section 707(a) contains no such limitation and on its face governs dismissal of consumer and non-consumer debts.  *See* § 707(a).  Therefore, in those cases involving non-consumer or primarily non-consumer debts there will be no overlap with subsection (b).  That is certainly true in this case, where Piazza has repeatedly stressed that his debts are "primarily business" related and involve little, if any, consumer debt.

Second, even in consumer debt cases where subsections (a) and (b) concurrently govern dismissal, our interpretation of "for cause" in § 707(a) will not render § 707(b) "wholly superfluous."  *See Conn. Nat'l Bank*, 503 U.S. at 253, 112 S. Ct. at 1149.  Unlike subsection (a), subsection (b) allows for a presumption of "abuse"—that is, a presumption that dismissal is warranted—under certain circumstances.  *See* § 707(b)(2)(A)(i); *see also Witcher*, 702 F.3d at 621 (discussing § 707(b)).  Once established, the debtor must produce highly specific evidence to rebut the presumption of abuse.  *See generally* § 707(b)(2)(B).  In stark contrast, § 707(a) establishes no such presumption of bad faith or "cause" for dismissal.  *See* § 707(a).  Under this Court's precedent, the movant always bears the burden of showing "cause" for dismissal under § 707(a).  *Simmons*, 200 F.3d at

20

743.  In this respect, § 707(b) provides a path for dismissal that is meaningfully different from § 707(a), and one that is not made superfluous by the ordinary meaning of "for cause."

Third, subsection (b) provides remedial options that subsection (a) does not. By its terms, § 707(b) provides not only for dismissal, but also for conversion of a Chapter 7 petition to Chapter 11 or 13 with the debtor's consent. *See* § 707(b)(1). Subsection (a)'s remedies, however, are limited to dismissal. *See* § 707(a).  Hence, the possibility of conversion to Chapters 11 and 13 provides yet another reason our interpretation of "for cause" does not "incorporate 'wholesale' the entirety" of § 707(b) into § 707(a).

Finally, Piazza's argument about surplusage leads to an absurdly narrow interpretation of the statute.  He claims that if "for cause" in § 707(a) encompasses bad faith, § 707(b)(3) is superfluous as that provision explicitly requires courts to consider "bad faith" when determining whether granting relief would constitute an "abuse" of the bankruptcy laws. *See* § 707(b)(3).  On this reading of the statute, however, courts would also render subsection (b) superfluous if they examined "the totality of the circumstances" when determining whether there was "cause" to dismiss under § 707(a).  After all, in addition to "bad faith," § 707(b)(3) also requires courts to consider "the totality of the circumstances" when the presumption of abuse does not arise or is rebutted. *See id.*  Thus, Piazza would

have this Court construe § 707 such that bankruptcy courts commit reversible error by thoughtfully considering all relevant circumstances when determining whether there is "cause" to dismiss under § 707(a). Such a reading of the statute is absurd and must be rejected. *See, e.g.*, *United States v. Brown*, 333 U.S. 18, 27, 68 S. Ct. 376, 381 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences."); *United States v. Griffith*, 455 F.3d 1339, 1345 (11th Cir. 2006) (stressing that this Court will adhere "to the common sense approach . . . where we can").

In sum, Piazza is incorrect in asserting that the plain, ordinary meaning of "for cause" in § 707(a) renders § 707(b) "mere surplusage." When read properly, we can "giv[e] effect to both" subsections (a) and (b) without "render[ing] one or the other wholly superfluous." *See Conn. Nat'l Bank*, 503 U.S. at 253, 112 S. Ct. at 1149. Accordingly, we reject the artificial limits Piazza would have us impose on the ordinary meaning of "for cause" in § 707(a).

### c. The Specific Controls the General

Similarly, Piazza contends "for cause" does not encompass bad faith, as the general language of § 707(a) is limited by more specific provisions, including 11 U.S.C. §§ 523(a)(19)(B)(i) and 727(a)(2)(A). In relevant part, § 727(a)(2)(A) denies discharge to debtors who, "with intent to hinder, delay, or defraud a creditor" transfer their property "within one year before the date of the filing of the

22

petition." *See* § 727(a)(2)(A). Section 523(a)(19)(B)(i) prohibits debtors from discharging, among other things, any debt that results from any judgment entered in any state judicial proceeding. *See* § 523(a)(19)(B)(i). Piazza essentially argues that, because he qualifies for denial of discharge under these provisions, the bankruptcy court erred in dismissing his case "for cause" under § 707(a).

We reject Piazza's contention that §§ 523(a) and 727(a) circumscribe the ordinary meaning of "for cause" in § 707(a). Although specific statutory provisions often "trump" more general ones, *Nguyen v. United States*, 556 F.3d 1244, 1253 (11th Cir. 2009), this presumption "is not an absolute rule," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2072 (2012). Rather, the "general/specific canon" is simply an "indication of statutory meaning that can be overcome by textual indications that point in the other direction." *Id.*

This case presents just such textual indications. Both the specific terms of the provisions as well as the general design of the Bankruptcy Code show that neither § 523 nor § 727 precludes alternative remedies "to prevent an abuse of process." *See, e.g.*, 11 U.S.C. § 105(a); *Marrama*, 549 U.S. at 375–76, 127 S. Ct. at 1112 (noting that even if § 105(a) had never been enacted, bankruptcy courts would nevertheless have authority to dismiss bad faith litigants based on "the inherent power of every federal court to sanction 'abusive litigation practices'" (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S. Ct. 2455, 2463

23

(1980)).  As the bankruptcy court in this case correctly reasoned, §§ 707(a), 727(a), and 523(a) "provide very different remedies under different circumstances" and are "not directly at odds."  *Piazza II*, 460 B.R. at 325.  Whereas § 707(a) prescribes only dismissal and permits refilling under another chapter of the Code, §§ 727(a) and 523 impose the more categorical penalty of denial of discharge.  For instance, denial of discharge under § 727(a)(2)–(6) precludes a debtor from discharging other debts under Chapter 7 in subsequent cases filed within one year.  *See* § 727(a)(7).  Similarly, pursuant to § 523(a)(10), denial of discharge under § 727(a)(2)–(6) precludes a debtor from discharging *any* debt that "was or could have been listed or scheduled" in the "prior case."  *See* § 523(a)(10).  These differences demonstrate that, even if §§ 727 and 523 are more specific provisions, there is no reason for them to "trump" the more general "for cause" inquiry under § 707(a).  *See Nguyen*, 556 F.3d at 1253.

Also, in the unique context of the Bankruptcy Code, general language intended to prevent abuse often receives its ordinary meaning notwithstanding more specific provisions.  *See Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 148–49 (4th Cir. 1996).  In *Kestell*, the Fourth Circuit interpreted § 105(a) as, among other things, "grant[ing] judges the authority to dismiss a bankruptcy petition sua sponte for . . . lack of good faith."  *Id.* at 149 (citation omitted).  Although other provisions of the Bankruptcy Code addressed good faith more specifically than did

24

the generally-phrased § 105(a), the Fourth Circuit stressed there was "no reason to read into" that statute "anything other than its plain meaning." *Id.* (internal quotation marks omitted). Section 105(a) may be an "omnibus provision phrased in . . . general terms," the court wrote, but that does not mean more specific provisions divest bankruptcy courts of the powers conferred by § 105(a). *See id.* at 148 (internal quotation marks omitted).

The same reasoning applies to § 707(a). *Cf. id.* (noting that "general phrases such as 'for cause' provide broad coverage for unenumerated instances of misuse"). Indeed, not only is *Kestell* legally correct, *see Marrama*, 549 U.S. at 367, 127 S. Ct. at 1107 (citing *Kestell* and reaching a significantly similar conclusion), it also makes good sense. That parties might have two options—one specific, one general—for combating abusive bankruptcy practices is no reason for judges to rewrite either option to be more lenient than the text's ordinary meaning would suppose. *Cf. Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera)*, 557 F.3d 8, 13 (1st Cir. 2009) (expressing reluctance "to read into" the Bankruptcy Code "by implication a new limit on judicial discretion that would encourage rather than discourage bankruptcy abuse").

### d. The Selective Inclusion Presumption

Finally, Piazza argues that, because Congress amended § 707(b) in 2005 to include the phrase "bad faith," it must therefore have intended to exclude bad faith

25

from the meaning of "cause" under § 707(a).  *See* The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, Title I, § 102(a)(2)(C), 119 Stat. 23.  In support of this contention, Piazza relies on the general rule of thumb that, when Congress "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Dean v. United States*, 556 U.S. 568, 573, 129 S. Ct. 1849, 1854 (2009) (internal quotation marks omitted).  In Piazza's view, Congress's 2005 amendments to subsection (b) give rise to the inference that anything included in those amendments must, by negative implication, be omitted from subsection (a).

Piazza's reliance on the "selective inclusion" presumption is misplaced, as Congress's inclusion of "bad faith" in § 707(b) did not, by implication, transform § 707(a) into a safe harbor for bad faith debtors.  As the Supreme Court has instructed, we are not to draw sweeping inferences "from congressional silence" when such inferences are "contrary to all other textual and contextual evidence of congressional intent."  *Burns v. United States*, 501 U.S. 129, 136, 111 S. Ct. 2182, 2186 (1991), *modified on other grounds by Irizarry v. United States*, 553 U.S. 708, 716, 128 S. Ct. 2198, 2203 (2008); *see also Ill. Dep't of Pub. Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir. 1983) ("Not every silence is pregnant.").  The "inference that items not mentioned were excluded by deliberate choice" "has force only

when the items expressed are members of an associated group or series." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S. Ct. 748, 760 (2003) (internal quotation marks omitted).  But when it is evident an amended provision "was not modeled after [the earlier one] and is couched in very different terms," the selective inclusion presumption is less persuasive, *see Gomez-Perez v. Potter*, 553 U.S. 474, 486–87, 128 S. Ct. 1931, 1940 (2008), and cannot overcome the ordinary meaning of statutory language, *see Field v. Mans*, 516 U.S. 59, 75–76, 116 S. Ct. 437, 446 (1995) (applying this principle to "common-law language" incorporated in a statute).

Here, the history, text, and structure of § 707(a) and (b) show that the selective inclusion presumption does not apply.  First, the provisions were not modeled after one another, nor have they been treated "as part of a package or commonly associated group or series."  *See Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 371 (3d Cir. 2007) (internal quotation marks omitted) (detailing the legislative history and development of § 707).  As originally enacted in 1978, § 707 contained only the "for cause" provision we now recognize as subsection (a).  *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95–598, 92 Stat. 2549 (codified as amended at 11 U.S.C. § 707(a)).  Not until 1984, following a consumer credit crisis, did Congress enact subsection (b).  *See* Bankruptcy Amendments and Federal Judgeship Act of 1984 (the 1984 Act), Pub. L. No. 98–

27

353, 98 Stat. 333 (codified as amended at 11 U.S.C. § 707(b)).  In enacting

subsection (b), Congress was not "narrow[ing]" or "discourag[ing] court review of

abuse cases to those involving consumer debt."  *Stewart v. U.S. Tr. (In re Stewart)*,

175 F.3d 796, 813 (10th Cir. 1999).  Rather, although courts dismissed cases "for

cause" under the original § 707 based on prepetition bad faith, *see, e.g.*, *Khan*, 35

B.R. at 719–20; *Sacramento Metro.*, 28 B.R. at 229–30, they were not doing so as

"readily" as Congress would have preferred in the context of consumer debts, *see*

*Stewart*, 175 F.3d at 813 (noting that § 707(b) "was enacted in response to . . .

judicial abdication of authority" (internal quotation marks omitted)).  Therefore,

subsection (b) did not limit examination of "abuse" or bad faith to consumer cases;

it instead "broaden[ed] and encourag[ed] such review in light of the fact many

bankruptcy courts were not dismissing abusive consumer petitions."  *Id.*

Similarly, Congress's addition of a bad-faith provision to subsection (b) in

2005 was intended "to correct perceived abuses of the bankruptcy system," *see*

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1329 (2010),

not to limit bankruptcy courts' ability to correct such abuses in non-consumer

cases or "plac[e] additional weapons in the hands of abusive debtors," *Acosta-*

*Rivera*, 557 F.3d at 13 (interpreting 11 U.S.C. § 521).  Like subsection (b)'s initial

enactment in 1984, the 2005 consumer-specific amendments merely made explicit

courts' implicit authority to combat bad faith filings.  *See Perlin*, 497 F.3d at 371

("[T]he legislative history to the 2005 Act does not indicate that the modifications to section 707(b) imply anything about the dismissal of bankruptcy cases under section 707(a)."); *see also* H.R. Rep. No. 109–31, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89 ("The purpose of the [2005 amendments] is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors."). As a result, the codification of "bad faith" in subsection (b) does not imply its removal from § 707(a)—particularly when doing so produces "results strangely at odds with other textual pointers." *See Field*, 516 U.S. at 75, 116 S. Ct. at 446; *cf. Hamilton*, 130 S. Ct. at 2475 (rejecting the inference that the incorporation of one provision signaled Congress's intent "to eliminate, *sub silentio*, the discretion that courts previously exercised").

The text and structure of subsection (a) and (b) also make clear they are "couched in very different terms." *See Gomez-Perez*, 553 U.S. at 488, 128 S. Ct. at 1941. The relatively brief § 707(a) is phrased in general language—*i.e.*, "for cause"—while § 707(b) is prolix and detailed. Subsection (b), as discussed, establishes a fairly sophisticated computation scheme for determining when a movant has established certain presumptions and when a debtor has successfully rebutted those presumptions. *See* § 707(b)(2)–(3). Subsection (a), by contrast, involves no such mathematical analysis. Its mechanism for determining when

29

dismissal is warranted turns on the simple, general words "for cause"—a phrase left undefined in the Code "so as to afford flexibility to the bankruptcy courts." *Little Creek*, 779 F.2d at 1072.

Thus, this is not a case in which "an omission bespeaks a negative implication." *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81, 122 S. Ct. 2045, 2050 (2002). The vast, material differences between § 707(a) and (b) cover far more than a single, key term that is included in one provision but omitted from the other. *Cf. Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1284 & n.5 (11th Cir. 2011) (applying the selective inclusion presumption because the only relevant distinction between two provisions of the Bankruptcy Code was the "conspicuous absence" of a single phrase). Contrary to Piazza's claims, the more reasonable inference to be drawn from Congress's decision not to amend § 707(a) is that bad faith was already clearly encompassed within the ordinary meaning of "for cause" dismissal. *Cf. Perlin*, 497 F.3d at 371 ("There is no indication that Congress intended [the 2005 amendments] to restrict a bankruptcy court's discretion in deciding motions to dismiss under section 707(a)."). In other words, § 707(a) was left undisturbed because "nothing more need[ed] [to] be said in order to effectuate the relevant legislative objective." *See Burns*, 501 U.S. at 136, 111 S. Ct. at 2186.

\* \* \*

30

Piazza has offered no persuasive reason to depart from the settled, ordinary meaning of "for cause" in § 707(a).  As relevant sources indicate, the ordinary meaning of "for cause" is adequate or sufficient reason.  Prepetition bad faith unquestionably constitutes adequate or sufficient reason to dismiss a Chapter 7 petition.  Hence, the bankruptcy court did not err in holding that the "for cause" language of § 707(a) permits involuntary dismissal upon a finding that the debtor's petition was filed in bad faith.

B.  *Bankruptcy Court's Dismissal of Piazza's Petition for Bad Faith*

Having concluded that prepetition bad faith constitutes "cause" for dismissal under § 707(a), we must next determine whether the bankruptcy court abused its discretion in dismissing Piazza's case based on the court's finding of prepetition bad faith.  *See Bal Harbour Club, Inc. v. AVA Dev., Inc. (In re Bal Harbour Club, Inc.)*, 316 F.3d 1192, 1194 (11th Cir. 2003) (indicating that dismissals "for cause" under § 1112(b) are reviewed for abuse of discretion).  An abuse of discretion occurs when a court applies the wrong principle of law or makes clearly erroneous findings of fact.  *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).  The legal standard by which the court finds bad faith is a question of law reviewed de novo, *see In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992), while the finding of bad faith itself is a factual determination "that we review only for clear error," *DeLauro v. Porto (In re Porto)*, 645 F.3d 1294, 1304 (11th Cir. 2011).

*1. Legal Standard for Determining Bad Faith*

As noted, the bankruptcy court found bad faith based on a multi-part totality-of-the-circumstances standard. *See Piazza I*, 451 B.R. at 614–15 (citing *Baird*, 456 B.R. at 116–17). Piazza argues the bankruptcy court "appl[ied] nothing more than a 'sniff test'" in finding bad faith. Although he does not articulate what the test should be, Piazza contends it should be something more than a bankruptcy judge deciding who deserves to be in bankruptcy court "pursuant to his or her own standards."

Piazza's arguments are without merit and his characterization of the bankruptcy court's decision in this case is unfounded. Bad faith does not lend itself to a strict formula. *See Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296, 298 (11th Cir. 1987) (noting "there is no particular test for determining whether a debtor has filed . . . in good faith"); *see also Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1501 (11th Cir. 1997) (observing "'bad faith' is not defined in the bankruptcy code," and "there is no legislative history addressing the intended meaning" of the term). It is instead a fact-intensive judgment that is "subject to judicial discretion under the circumstances of each case." *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984); *cf. Tamecki*, 229 F.3d at 207

("[T]he decision to dismiss a petition for lack of good faith rests within the sound discretion of the bankruptcy court.").

In light of its inherently discretionary nature, a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under § 707(a). The totality-of-the-circumstances inquiry looks for "atypical" conduct, *see Marrama*, 549 U.S. at 375 n.11, 127 S. Ct. at 1111 n.11, that falls short of the "honest and forthright invocation of the [Bankruptcy] Code's protections," *Kestell*, 99 F.3d at 149.[7]  In making that determination, bankruptcy courts must, as they so often do, "'sift the circumstances surrounding [a] claim to see that injustice or unfairness is not done.'"  *See Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.)*, 709 F.2d 762, 764 (1st Cir. 1983) (quoting *Pepper v. Litton*, 308 U.S. 295, 304–05, 307–08, 60 S. Ct. 238, 244, 245–46 (1939)).  Under this inquiry, bad faith is ultimately "evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy

---

[7] Among other considerations that might indicate bad faith are a debtor's "intent to abuse the judicial process," *Albany Partners*, 749 F.2d at 674, a debtor's intentional efforts "to delay or frustrate" legitimate creditors, *id.*, a debtor "deliberately rack[ing] up debts he has no ability to repay and then seek[ing] to shield himself from creditors through bankruptcy," *Padilla*, 222 F.3d at 1194–95 (Rymer, J. dissenting), a debtor having "non-economic motives," including "to frustrate [a] divorce court decree" or force an ex-spouse into bankruptcy, *Huckfeldt*, 39 F.3d at 832, a debtor "using bankruptcy as a refuge from another court's jurisdiction," *id.*, a debtor making "every effort to avoid payment of an obligation" despite being "capable of at least partial repayment," *Zick*, 931 F.2d at 1127 n.3 (internal quotation marks omitted), a debtor having primarily a "single creditor," *id.* at 1128, a debtor's "failure to make significant lifestyle adjustments or efforts to repay," *id.*, and a disproportionate debt-to-income ratio in the absence of a "marked calamity or sudden loss of income," *Tamecki*, 229 F.3d at 207.  These considerations, however, are "not exhaustive." *See Natural Land Corp.*, 825 F.2d at 298.

33

Code." *McDow*, 295 B.R. at 74; *see also Tamecki*, 229 F.3d at 207 (holding that bad faith turns on "whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law"—a determination which can be made only on a case-by-case basis); *Black's Law Dictionary* 159 (9th ed. 2009) (defining a "bad-faith filing" as one "that is inconsistent with the purposes of the Bankruptcy Code or is an abuse of the bankruptcy system").

Contrary to Piazza's assertions, this does not amount simply to a "sniff test." As with the determination of bad faith in other contexts, "a conclusory finding . . . is not sufficient to withstand appellate review." *See Porto*, 645 F.3d at 1305 (reviewing a bankruptcy court's sanctioning of a litigant for bad faith). The bankruptcy court must articulate reasoned bases and make adequate factual findings to support its determination of bad faith under § 707(a). *See Zick*, 931 F.2d at 1127–28 (reasoning that the grounds for a determination of bad faith "should be set out in the bankruptcy court's decision"). After all, even though we review a finding of "bad faith" only for clear error, *see Porto*, 645 F.3d at 1304, "bald assertions provide no meaningful basis for this court to review the ultimate finding of 'bad faith,'" *Rothenberg v. Sec. Mgmt. Co.,* 736 F.2d 1470, 1472–73 (11th Cir. 1984) (remanding a case for further factual findings regarding attorney sanctions).

34

Here, the bankruptcy judge relied on factors from *In re Baird* when determining whether the totality of the circumstances revealed bad faith. *See Piazza I*, 451 B.R. at 614–15. Although we do not adopt the *Baird* factors, the bankruptcy court did not commit reversible error in its totality-of-the-circumstances analysis. Rather, similar to the inquiry we endorse, the bankruptcy court examined the relevant facts of the case to determine Piazza's "intentions" and whether he was "an honest but unfortunate debtor entitled to a fresh start." *See id.* at 615. The court then articulated reasoned bases for its finding of bad faith and explained that finding in terms of indisputable record evidence. *See id.* at 616–17. The bankruptcy court, therefore, did not apply an erroneous legal standard in dismissing Piazza's case for bad faith.[8]

## 2. Factual Determination of Piazza's Bad Faith

We now decide whether, under the totality of the circumstances, the bankruptcy court's finding of bad faith in this case was clearly erroneous. *See Frazier*, 387 F.3d at 1259. A factual finding is clearly erroneous only when this Court, after reviewing all of the evidence, is left with "the definite and firm

---

[8] We also reject Piazza's claim that "the 'notice and a hearing' requirement was not fulfilled" in this case. In relevant part, § 102(1)(A) of the Bankruptcy Code defines "notice and a hearing" to "mean[]after such notice *as is appropriate* in the particular circumstances, and such opportunity for a hearing *as is appropriate* in the particular circumstances." 11 U.S.C. § 102(1)(A) (emphases added). In this case, these criteria were satisfied. Piazza was clearly on notice of Nueterra's motion to dismiss for bad faith. Also, when asked by the bankruptcy court whether an evidentiary hearing was necessary, Piazza's counsel confidently declared "[n]ot at all, Your Honor." Piazza cannot now claim on appeal he was somehow denied "minimal procedural due process" in the bankruptcy court.

conviction" that a mistake has been committed. *Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.)*, 680 F.3d 1298, 1310 (11th Cir. 2012). Such a conviction arises only when there has been "a manifest disregard of right and reason." *Godfrey v. Powell*, 159 F.2d 330, 332 (5th Cir. 1947).[9]

Piazza argues the bankruptcy court's finding of bad faith meets this exacting standard because it is not only unsupported by the record, but is also contrary to the only evidence in the record. Piazza's contentions are meritless and sharply contradicted by his own admissions before the bankruptcy court. First, the court did not clearly err in finding Piazza filed bankruptcy "to avoid" paying a "large single debt" arising from a state-court judgment he evaded for more than two years. *Piazza I*, 451 B.R. at 616. Piazza admitted in his Schedule F and in his motion to the bankruptcy court that more than half of his total debt was a large, single debt owed to one unsecured creditor—Nueterra. Piazza also admitted not paying Nueterra's state-court judgment for over two years, and that it was "the motivating factor" in filing bankruptcy when he did.

Second, the court did not clearly err in finding that despite his debts to Nueterra and others, Piazza continued "paying debts of insiders" and transferred

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

thousands of dollars every month to his wife. *Id.* at 616. Piazza admitted in his Schedules F and J, in his deposition testimony,[10] and in his motion to the bankruptcy court, that he continued paying his great aunt's mortgage despite the interest-bearing, $161,383 state-court judgment he owed. Also, while Piazza now contends there is "no evidence" he transferred assets or money to his wife, Piazza admitted in his deposition he had been transferring $4,000 "and change" to his wife every month for "a little over five years." Piazza's motion to the bankruptcy court also admitted that turning over "most of his paycheck" to his wife was a consistent "practice" "[s]ince the beginning of the marriage."

Third, the court did not clearly err in finding Piazza failed to repay his creditors or "make life-style adjustments" despite his debts. *Id.* at 616–17. Piazza admitted in his motion to the bankruptcy court that he had paid Nueterra nothing prior to filing for bankruptcy. Piazza admitted that, despite his debts, he cosigned on his sister's car loan, leased a new luxury vehicle for himself in 2010, and every month transferred thousands of dollars to his wife while she, in turn, spent $2,000

---

[10] Piazza argues his "deposition testimony was not in the record below," and therefore his sworn admissions "should not be in the record herein." Piazza is blatantly wrong on both points. Pertinent evidence from the deposition was presented to the bankruptcy court in Piazza's motion to the court and by Nueterra's counsel at oral argument. Also, the entire deposition transcript was included in Nueterra's filings with the district court. Moreover, even if this were not the case, Piazza's sworn deposition testimony would not categorically be excluded from consideration. *See, e.g.*, *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 n.4 (11th Cir. 2003) (stressing this Court's equitable authority to supplement the record when "in the interests of justice"); *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000) (reaffirming this Court's equitable power to supplement the record when evidence "would establish beyond any doubt the proper resolution of the pending issues").

per month on credit cards and invested $2,000 per month in her 401(k). Piazza contends his activities and failure to change his lifestyle do not violate the Bankruptcy Code, and therefore should not factor into the bad faith calculus. However, even assuming Piazza's financial activities were not expressly prohibited by the Bankruptcy Code, his conduct nonetheless supports the bankruptcy court's finding that he refused to make life-style adjustments.

Fourth, the court did not clearly err in finding Piazza failed to pay his creditors despite having "sufficient resources" to "repay at least a portion of his debts." *Id.* at 617. Piazza admitted in his Amended Schedule I that he and his wife's joint monthly income exceeds $10,000. This means that between entry of the state-court judgment in favor of Nueterra in January 2008, and Piazza's bankruptcy filing in October 2010, Piazza and his wife collectively made more than $300,000. Moreover, Piazza admitted in his motion to the bankruptcy court that his wife, who makes less than him, earns a "substantial income." By parity of reasoning, Piazza himself earns even *more* than a "substantial income" and the Piazzas' joint household income comprises at least two "substantial income[s]."[11]

---

[11] Although bankruptcy courts may not rely *solely* upon a debtor's ability to pay to the exclusion of all other considerations, a debtor's resources is one relevant indicator, among many, of bad faith or "cause" to dismiss. *See, e.g.*, *Perlin*, 497 F.3d at 374 (collecting cases). In this case, the bankruptcy court did not rely exclusively, or even primarily, on Piazza's ability to repay his debts. Much to the contrary, the court considered Piazza's admittedly "substantial income" alongside a litany of other permissible indicia of bad faith. *See Piazza I*, 451 B.R. at 614–17.

Under the totality of the circumstances, the bankruptcy court did not clearly err in finding Piazza filed his Chapter 7 petition in bad faith.  Indeed, Piazza's own admissions show the bankruptcy court's factual finding of bad faith is anything but "a manifest disregard of right and reason."  *Godfrey*, 159 F.2d at 332. Accordingly, the bankruptcy court did not abuse its discretion in dismissing Piazza's Chapter 7 petition on a finding of bad faith.

## III.    CONCLUSION

For the foregoing reasons, the order of the bankruptcy court dismissing Piazza's Chapter 7 bankruptcy petition is **AFFIRMED.**